No. 85-621

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

IN RE THE MARRIAGE OF
DORIS V. WATERS,

> Petitioner and Respondent,

and

DUANE R. WATERS,

> Respondent and Appellant.

---

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

>   For Appellant:
>
>>   Strause & Anderson; Lawrence A. Anderson, Great Falls,
>>   Montana
>
>   For Respondent:
>
>>   Swanberg, Koby, Swanberg & Matteucci; Gorham Swanberg,
>>   Great Falls, Montana

---

> Submitted on Briefs: May 30, 1986
>
> Decided:   September 10, 1986

Filed:   SEP 10 1986

_Ethel M. Harrison_
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

This case concerns the narrow question whether the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, should be applied retroactively to final decrees of dissolution which were entered subsequent to the United States Supreme Court decision in McCarty v. McCarty but prior to the aforementioned federal statute. Although a number of states have already considered this question, it is one of first impression before this Court.

Doris Waters filed a petition in the District Court of the Eighth Judicial District to modify the dissolution decree entered in that court on October 20, 1981. The petition was filed May 24, 1985, pursuant to Rule 60(b)(5) or (6) of the Montana Rules of Civil Procedure, or, in the alternative, § 40-4-208, MCA. Duane Waters moved to dismiss the petition. The court denied his motion and entered judgment awarding Doris Waters one-half of Duane Waters' military pension and relieving the latter of his obligation to pay maintenance. We affirm that judgment.

Duane Waters, appellant, and Doris Waters, respondent, were married in Wray, Colorado, on May 23, 1954. Duane joined the armed forces of the United States approximately eighteen months before marrying Doris. In 1975 he retired from the United States Air Force and began receiving his military pension. On October 20, 1981, the parties obtained a dissolution of their marriage.

At the time of the initial hearing, the law in Montana treated military pensions as a marital asset which was subject to equitable distribution. In Re Marriage of Miller (Mont. 1980), 609 P.2d 1185, 37 St.Rep. 556. However, before

the final decree of dissolution was entered, the United States Supreme Court held, in effect, that federal law precluded state courts from dividing military retirement pay pursuant to state community property or equitable distribution laws. McCarty v. McCarty (1981), 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589. As a result, the District Court found that Duane's military pension was not a marital asset, and it awarded Doris $300 per month in maintenance in lieu thereof. She did not appeal from that judgment.

Effective February 1, 1983, Congress passed the "Uniformed Services Former Spouses' Protection Act" (USFSPA) which provides:

> Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

10 U.S.C. § 1408(c)(1). This Act specifically overruled McCarty and allowed state courts to once again consider military retirement pay when making a distribution of property upon divorce. Some twenty-seven months after the Act was passed, Doris filed her petition to modify the decree of dissolution.

Appellant has raised three issues on appeal:

1. Has Doris Waters waited an unreasonable length of time to petition for modification of the judgment?

2. Is the petition to modify the judgment barred by laches?

3. Does a change in the applicable law after a final judgment has been rendered establish "changed circumstances

3

so substantial and continuing as to make the terms unconscionable" under § 40-4-208, MCA?

I

Respondent filed her petition under Rule 60(b)(5) or (6), M.R.Civ.P., and the District Court found that the action was proper under Rule 60(b)(6). Appellant contends that the action was not brought within a reasonable time, but he does not raise the issue whether Rule 60(b) can properly be used in this case as a means for reopening the final judgment. Nevertheless, we must consider this question since it involves the subject matter jurisdiction of this Court and of the lower court.

A

Respondent contends and the District Court found that the USFSPA should be applied retroactively so as to allow her to begin receiving a share of appellant's military pension. In order to prevail on this argument, respondent must overcome two formidable obstacles. First, as a general rule, statutes are presumed to operate prospectively only. Penrod v. Hoskinson, M.D. (1976), 170 Mont. 277, 552 P.2d 325; Sullivan v. City of Butte (1922), 65 Mont. 495, 211 P. 301. Second, the doctrine of finality of judgments is an important concept in our law, and it is entitled to great weight. There must be some point at which litigation ends and the respective rights between the parties are forever established. Under ordinary circumstances, once this point is reached a party will not be allowed to disturb that judgment. However, Rule 60(b) is an exception to the finality of judgments doctrine.

Rule 60(b)(6), M.R.Civ.P., provides:

4

> On motion and upon such terms as are
> just, the court may relieve a party or
> his legal representative from a final
> judgment, order, or proceeding for the
> following reasons:
>
> . . .
>
> (6) any other reason justifying relief
> from the operation of the judgment. The
> motion shall be made within a reasonable
> time. . .

The source of this rule is Rule 60(b) of the Federal Rules of Civil Procedure. Our rule is identical to the federal rule except in certain respects not pertinent to this decision.

In determining what the ambiguous phrase "any other reason" means, the United States Supreme Court has stated:

> In simple English, the language of the
> "other reason" clause, for all reasons
> except the five particularly specified,
> vests power in courts adequate to enable
> them to vacate judgments whenever such
> action is appropriate to accomplish
> justice.

Klapprott v. United States (1949), 335 U.S. 601, 614-615, 69 S.Ct. 384, 390, 93 L.Ed. 266, 277. Subsequent to Klapprott, the Court set up the "extraordinary circumstances" test in Ackermann v. United States (1950), 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207. Thus, before a party will be allowed to modify a final judgment under Rule 60(b)(6), he must first show that none of the other five reasons in Rule 60(b) apply, and he must also demonstrate extraordinary circumstances in his case which justify relief.

We find that respondent has met both of these requirements. None of the other five reasons listed in the rule apply to this case. Likewise, respondent has shown extraordinary circumstances sufficient to allow reopening of the dissolution decree.

5

Appellant is correct in his assertion that a change in the decisional law subsequent to a final judgment does not represent extraordinary circumstances under Rule 60(b) so as to allow reopening of that judgment. Most federal courts considering that issue have so held. See e.g., McKnight v. United States Steel Corp. (7th Cir. 1984), 726 F.2d 333, 336, holding that "a change in the applicable law after entry of judgment does not, by itself, justify relief under 60(b)," and DeFilippis v. United States (7th Cir. 1977), 567 F.2d 341, 343, stating at Fn. 5 that the "courts are generally agreed that a change in the law after entry of judgment does not alone justify relief under [Rule 60](b)(6)." Additionally, this Court has previously held that a change in the decisional law after a final judgment does not provide a sufficient basis for modifying that judgment under Rule 60(b). Fiscus v. Beartooth Elec. Cooperative, Inc. (1979), 180 Mont. 434, 591 P.2d 196. However, the circumstances of this case go far beyond a mere change in the law.

The law in Montana prior to McCarty was such that military pensions were treated like any other asset of the marriage and were subject to equitable distribution. After the USFSPA was passed, this Court decided In Re Marriage of Kecskes (Mont. 1984), 683 P.2d 478, 41 St.Rep. 1170, which reaffirmed that military retirement pay constituted a marital asset. Thus, those spouses of members of the armed forces who obtained dissolutions prior to McCarty were entitled to share in their spouses' military pension. Likewise, those spouses who obtain dissolutions after Kecskes will be entitled to have their spouses' military pensions treated as a marital asset. However, those spouses who were divorced during the period between McCarty and Kecskes were denied

6

this right. To forbid those spouses who were divorced during this period from obtaining a modification of their decrees would create a category of people who were denied substantial rights solely because of the unfortunate time within which their decrees happened to be made final. This fate does not befall others similarly situated whose decrees were not or will not be made final during that period.

The legislative history of the USFSPA indicates that the Act was meant to apply to those spouses who were divorced during the period between McCarty and the Act. "The primary purpose of the bill is to remove the effect of the United States Supreme Court decision in McCarty v. McCarty, 453 U.S. 210 (1981)." 1982 U.S. Code Cong. & Ad. News 1555, 1596. It is also clear that Congress meant for the law to apply retroactively. The Committee Report states at p. 5:

> The provisions of S. 1814 reversing the effect of the McCarty decision are retroactive to June 26, 1981, the date on which the U. S. Supreme Court issued that decision. That is, the committee intends the legislation to restore the law to what it was when the courts were permitted to apply State divorce laws to military retired pay. Former spouses divorced in the interim period between the McCarty decision and the effective date of this law will have the opportunity to return to court to have their decrees modified in light of this legislation.

At p. 16, the Report reiterates:

> This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the effective date of this legislation the opportunity to return to the courts to take advantage of this provision.

7

Thus, it is obvious that Congress intended the USFSPA to apply to those spouses who were denied their share in military pensions solely because of the McCarty decision.

Because of the unique factual situation which is present in this case and in others similarly situated, we hold that the USFSPA should be applied retroactively and that Rule 60(b)(6) may be used to modify dissolution decrees that were final after the McCarty decision but before the effective date of the USFSPA. However, we emphasize the limited nature of this decision; it does not establish a general rule for reopening a final judgment merely because there has been a subsequent change in the law upon which that judgment was based. Only when extraordinary circumstances are found to exist, as in the present case, may Rule 60(b)(6) be used to modify a final judgment.

This holding is consistent with decisions in other jurisdictions. We have found no cases which have refused to allow modification of divorce decrees which became final after McCarty where a procedural mechanism similar to Rule 60(b) existed in the state. See e.g., Flannagan v. Flannagan (Wash. 1985), 709 P.2d 1247; Smith v. Smith (Del. 1983), 458 A.2d 711; Koppenhaver v. Koppenhaver (N.M. 1984), 678 P.2d 1180; Castiglioni v. Castiglioni (N.J. 1984), 471 A.2d 809. Like the views expressed by other courts considering this issue, we find that to rigidly apply the doctrine of finality of judgments in this situation would work a substantial injustice and would frustrate the intent of Congress in passing the USFSPA.

B

Rule 60(b)(6) provides that the motion "shall be made within a reasonable time . . ." What is a reasonable time

8

will depend on the particular facts of the individual case. Questions of timeliness under the rule are addressed to the sound discretion of the court, and the court's judgment will be overturned only upon a showing of abuse of discretion. See McKnight, supra. Relevant to the determination of timeliness is prejudice to the party opposing the motion and the basis for the moving party's delay. See Matter of Whitney-Forbes, Inc. (7th Cir. 1985), 770 F.2d 692.

Appellant contends that the motion was not filed within a reasonable time because the USFSPA became effective on February 1, 1983, and respondent's motion was not filed until May 24, 1985. Were appellant prejudiced by this delay, his argument might have some merit. However, the court granted respondent the right to one-half of appellant's military pension payments starting on August 1, 1985, and relieved appellant of his obligation to pay maintenance after July 31, 1985. We perceive no prejudice to appellant by respondent's delay. The District Court did not abuse its discretion by finding that the motion was filed within a reasonable time.

II

Appellant contends next that respondent's motion is barred by laches. Since we have determined that respondent filed her motion within a reasonable time and that appellant has suffered no prejudice by the delay, this assertion is without merit.

The third issue raised by appellant will not be considered since we have determined that respondent's motion was proper under Rule 60(b)(6), M.R.Civ.P.

Affirmed.

                                    _____
                                         Chief Justice

9

We concur:

John Conway Harrison

Frank B Morrison

John C. Sheehy

_(signature)_

William E Hunt

R. C. Gulbrandson

Justices