No. 88-324

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

ELEANOR KELLY,

Plaintiff and Appellant,

-vs-

DON WIDNER and HARLEY HUNTLEY,

Defendants and Respondents.

APPEAL FROM: District Court of the Twentieth Judicial District,
In and for the County of Sanders,
The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Joan Jonkel argued; Jonkel Law Offices, Missoula,
Montana
Richard Simonton; Simonton, Howe & Jackson, Glendive,
Montana

For Respondent:

Robert A. Terrazas argued; Worden, Thane & Haines,
Missoula, Montana

Submitted: February 10, 1989

Decided: April 6, 1989

Filed:

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This appeal arises from a suit for personal injuries brought by Eleanor Kelly against Mr. Widner and Mr. Huntley. Ms. Kelly signed a release with Farmers Insurance Company in exchange for $8,900. She later filed a personal injury action against the insureds, Mr. Widner and Mr. Huntley, alleging negligence. In their answer, defendants plead the affirmative defense of release. The District Court granted summary judgment in favor of the defendants and Ms. Kelly appeals from that judgment. We reverse the summary judgment of the District Court and remand.

The issues are:

1. Did the District Court err in granting summary judgment by finding that no genuine issues of material fact existed?

2. Did the District Court err in imposing technical pleading requirements in its summary judgment motion?

3. Did the District Court err in granting defendants' request for a protective order?

Ms. Kelly was injured in an auto accident on November 18, 1979. Mr. Widner was the driver of the automobile which was owned by Mr. Huntley. Ms. Kelly was a passenger in the automobile. The accident fractured Ms. Kelly's left leg in several places and caused other minor injuries. Doctors inserted a rod and bolts in her leg to hold the bone together and placed the leg in a cast. Ms. Kelly was hospitalized for 23 days, and was in a cast for 10 months.

At the time of the accident Ms. Kelly was 45, divorced, and lived alone. She had a ninth grade education. She rented a log cabin with no phone, and her car did not run. She had previously worked as a waitress, earning $2.75 an hour. Had she not been injured, she claims she would have

begun a new job at $3.50 an hour. With her leg in a cast she was unable to work at all. During the months of December 1979 and January 1980, she had only $10 and food stamps to live on. In January 1980 Mr. Huntley's insurance agents contacted Ms. Kelly. Mr. Widner brought her to his home so she could receive a call from the insurance agents. They questioned her over the phone about the accident and her injuries. The next day, on thirty minutes notice, the agents came to her home. They asked about her medical bills, lost wages, and income. The agents made out a check for $5,325, which Ms. Kelly endorsed to the hospital, and a check to Ms. Kelly for $3,634. From the $3,634, Ms. Kelly paid $1,542 in doctor bills; $1,460 was attributable to lost wages. The agents were at her home approximately thirty minutes. Ms. Kelly was not represented by an attorney. In exchange for the checks Ms. Kelly signed a release dated January 24, 1980. She also endorsed the two checks. Each check contained release language above the signature line. Thus Ms. Kelly actually signed three releases.

In September of 1980 Ms. Kelly's doctors determined that her bone had not healed. They removed the cast and performed another leg surgery. However, pain and instability have prevented Ms. Kelly from holding any job which requires standing and walking. Ms. Kelly has incurred additional medical bills, and claims she has been unable to work during the 8 years since the accident.

Before discussing the issues involved, we feel it is appropriate to mention the obvious time delay in Ms. Kelly's suit. While this is not a complicated case, it has stretched over a period of nearly 9 years to date. Ms. Kelly filed her initial suit on November 25, 1980. Defendants answered on March 5, 1981, asserting the release as an affirmative defense. In February of 1982, Ms. Kelly served her first set

3

of interrogatories; however, defendants objected, calling them stock interrogatories. The case then lay dormant for four years, and from 1986 to present minimal discovery has been accomplished. No explanation is given for this delay. It is apparent that plaintiff's counsel have not been diligent in pursuing this claim. The record also demonstrates that the defendants were not interested in bringing the matter to dispostion. Neither party has handled this case in a timely manner.

## I

Did the District Court err in granting summary judgment by finding that no genuine issues of material fact existed?

The appropriate standard in granting summary judgment was stated in Kronen v. Richter (1984), 211 Mont. 208, 683 P.2d 1315, 1317:

> Summary judgment is never to be used as a substitute for trial if a factual controversy exists. Reaves v. Reinbold (Mont. 1980), 615 P.2d 896, 37 St.Rep. 1500. Summary judgment is only proper if the pleadings, depositions, answers to interrogatories and admissions on file show there is no genuine issue of material fact. Anderson v. Applebury (1977), 173 Mont. 411, 567 P.2d 951. The standard that an appellate court applies in reviewing a grant or denial of a motion for summary judgment is the same as that utilized by the trial court initially under Rule 56, M.R.Civ.P.--a summary judgment is proper when it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 10 Wright, Miller and Kane, Federal Practice and Procedure, section 2716, p. 643.

Further, the defendant correctly recognizes the burden of proof which is required in a summary adjudication. Initially the burden of proof must be carried by the moving party seeking summary judgment, in this case, Mr. Widner and

4

Mr. Huntley. However, where the record discloses no genuine issue of material fact, the burden of proof shifts to the party opposing the motion, in this case Ms. Kelly, who must come forward with substantial evidence raising an issue of fact. Once the burden has shifted in this fashion, the party opposing the motion is held to a standard of proof about equal to that initially imposed upon the moving party under Rule 56(c), M.R.Civ.P. Harland v. Anderson (1976), 169 Mont. 447, 548 P.2d 613, 615; Kronen, 683 P.2d at 1318.

In light of the above standard and burden of proof, we conclude that Ms. Kelly raised a genuine issue of material fact in this case. Therefore, summary judgment was not appropriate.

A release is governed by contract law, and may be rescinded for the same reasons which allow rescission of a contract. Westfall v. Motors Insurance Corporation (1962), 140 Mont. 564, 374 P.2d 96, 98-99. The validity of a release may be challenged therefore on the basis of unconscionability.

In determining unconscionability we have previously applied the UCC standard. In All-States Leasing v. Top Hat Lounge (1982), 198 Mont. 1, 649 P.2d 1250, a case involving a lease transaction, we looked to § 30-2-302, MCA, which is modeled after the same provision in the Uniform Commercial Code, and provides:

> (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
> (2) When it is claimed or appears to the court that the contract or any clause thereof may

5

be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

The official comment to this section of the UCC states the basic test for unconscionability:

[W]hether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract . . . The principle is one of the prevention of oppression and unfair surprise.

In Westlake v. Osborne (1986), 713 P.2d 548, 551, 43 St.Rep. 200, 204, we applied this test in a contract case. While this statute applies to sales transactions under the UCC, courts have used this definition by analogy, to apply in non-sales cases. Restatement (Second) of Contracts § 208 (1979). See also Howard D. Hunter, Modern Law of Contracts § 12.06 (1986). We reaffirm the use of this standard.

Unconscionability is an equitable doctrine, without a succinct or precise definition. While no single factor is determinative, elements which may be indicators of unconcionability include unequal bargaining power, lack of meaningful choice, oppression, and exploitation of the weaker party's vulnerability or lack of sophistication. See generally, J. Calamari and J. Perillo, The Law of Contracts § 56 (1970). Inadequacy of consideration does not by itself invalidate a bargain, but may be a factor in determining conscionability. Restatement (Second) of Contracts § 228 (1979).

The underlying principle of conscionability is that of doing justice under the circumstances of each case. We approve of this standard, framed by the Illinois Supreme

Court, in Scherer v. Ravenswood Hosp. Med. Ctr. (Ill. 1979), 388 N.E.2d 1268, 1271, when it stated:

> The modern trend is to set aside releases of personal injury claims in situations where the facts, when finally known, present an unconscionable result because of the equitable principle of doing justice under the circumstances of each case.

The present case includes three circumstances which are relevant to a determination of unconscionability. First, Ms. Kelly's dire financial situation, her lack of education and lack of legal advice, and her isolated living arrangements created a vulnerability susceptible to exploitation. Second, at the time of settlement there was substantial uncertainty as to the extent of injury to Ms. Kelly's leg, and the future prognosis. The surgery on Ms. Kelly's leg had required insertion of a steel rod. When Ms. Kelly executed the release, it had only been two months since the accident. Her leg was still in a cast and would remain in a cast for another 8 months. It was obvious that Ms. Kelly's leg would not be healed for some time. It was also clear that Ms. Kelly would be unable to resume work in the near future. Ms. Kelly's physical condition suggests that this was not an appropriate time for execution of a complete release. Third, the insurance adjustors procured a very hasty settlement in this case, spending only half an hour in the total discussion. When they left, Ms. Kelly had released all claims, yet received barely enough money to pay her medical expenses through the date of settlement. There is an issue of fact whether the checks issued to Ms. Kelly were adequate under the circumstances known by the parties at that time. The appropriateness of having Ms. Kelly execute a complete release in her particular situation, and procured in that manner, is subject to question. We conclude that the

7

combination of these three circumstances raises an issue of fact whether under all the circumstances, justice was done.

Furthermore, facts subsequent to a settlement may be considered in determining unconscionability. Newborn v. Hood (Ill.App.3d 1980), 408 N.E.2d 474, 476. The Illinois Supreme Court in Scherer and Hood considered the large disparity between the settlement amount and the actual monetary loss which the injured party eventually incurred. In the present case that disparity may be similarly large. Ms. Kelly claims she has been unable to work for the 8 years since the accident, and this disability may continue. She claims her leg needs further medical attention, including surgery. She is entitled to a factual determination on the issue of whether the settlement amount indicates an unconscionable bargain. We conclude that Ms. Kelly has raised a sufficient issue of material fact to preclude summary judgment.

We reverse the summary judgment by the District Court and remand.

## II

Did the District Court err in imposing technical pleading requirements in its summary judgment ruling?

Ms. Kelly alleges that the District Court imposed technical pleading requirements in making its summary judgment ruling, and we conclude that the court may have done so. We therefore discuss this issue although it does not appear that Ms. Kelly was prejudiced. In Ms. Kelly's complaint she alleged only negligence. Defendants' answer raised the affirmative defense of release. Ms. Kelly challenged the validity of the release in answers to interrogatories and in her brief in opposition to summary judgment. She never amended her complaint, nor made a responsive pleading to defendants' answer. In the Order and Memorandum which granted summary judgment, the District Court stated, "The

8

Plaintiff has not, in any of her pleadings or replys to Defendant's pleadings, questioned the validity of the January 24, 1980 Release." The opinion also mentioned twice that plaintiff had not plead with particularity nor argued duress, menace, fraud, nor undue influence. The court stated that it therefore would not address any of those defenses which Ms. Kelly had asserted. Because we have concluded that an issue of fact exists as to unconscionability, it is unnecessary to consider whether an issue of fact exists relative to these other theories. We nevertheless discuss the pleading requirements for clarification.

Pleading requirements begin with Rule 7(a) M.R.Civ.P., which provides:

> There shall be a complaint and an answer; and there shall be a reply to a counterclaim denominated as such; and an answer to a cross-claim; a third-party complaint, if a person who was not an original party is summoned under Rule 14; and there shall be a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

This rule neither requires nor allows a responsive pleading to an answer. Thus Ms. Kelly was not required to reply to defendant's answer. Further, the affirmative defense of release was deemed denied pursuant to Rule 8(d), M.R.Civ.P., which provides:

> Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.

In Wheat v. Safeway Stores, Incorporated (1965), 146 Mont. 105, 404 P.2d 317, the defendants raised the

9

affirmative defense of release in the answer, and later moved for judgment on the pleadings based on the ground that plaintiff failed to reply to the answer. The motion was granted, but we concluded that the District Court had erred, stating:

> From this authority, it is clear that the plaintiff had no duty to reply unless ordered to do so by the court. No such order was made in this case. The defendant's contention that a reply was mandatory to an affirmative defense of a release set forth in defendant's answer is, under the above authority and Rule 7(a), without merit.

404 P.2d at 319.

The intent of Rule 7(a) was explained in B. Mason, The Montana Rules of Civil Procedure, 23 Mont.L.Rev. 3, 19, (1961), as follows:

> Under the Rules pleadings are fewer and terminate earlier than under code practice. Code practice contemplates a three stage system of pleadings, consisting of a complaint, an answer, and a reply whenever new matter is alleged in the answer. The Rules allow only two stages, unless the court in its discretion otherwise orders. Under Rule 7(a) a reply is mandatory only when the answer contains a counterclaim denominated as such . . .

As stated in Wheat, Ms. Kelly was not required to file a reply or otherwise plead to the issue of release. The absence of a responsive pleading should not have been considered by the District Court in a summary judgment motion. We sense the presence of frustration on the part of the District Court because of the extreme delay in this case, and we have the same sense of frustration. Nevertheless, procedural law must still be applied to Ms. Kelly's case.

### III

Did the District Court err in granting defendant's request for a protective order?

In December of 1986, defendant moved for summary judgment on whether the release barred Ms. Kelly's claim. Ms. Kelly requested a continuance pursuant to Rule 56(f), M.R.Civ.P., which was granted. Thereafter, in interrogatories and requests for production, she requested information about the training of the insurance agents, the process by which they evaluate claims, and their job descriptions. Defendants sought a protective order, stating that this information was not relevant to the adequacy of the release. The court granted the protective order.

In view of our conclusions in Part I it is not necessary to discuss this issue in detail. Ms. Kelly may now proceed under Rule 26, M.R.Civ.P., and this type of information will be obtainable.

We reverse and remand to the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice R. C. McDonough did not take part in this decision.