No. 90-145

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN RE THE MARRIAGE OF DONNA A. SAMSON,
     Petitioner and Appellant,
     and
EDWIN C. SAMSON,
     Respondent and Respondent.

'90 DEC 11 AM 11 00
ED SMITH, CLERK
MONTANA SUPREME COURT
FILED

APPEAL FROM:   District Court of the Eleventh Judicial District
               In and for the County of Flathead,
               The Honorable Leif B. Erickson, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Randall S. Ogle, Ogle & Worm, Kalispell, Montana
          59903-0899

     For Respondent:

          Gary G. Doran, Moore & Doran, Kalispell, Montana
          59903-1198

                              Submitted:  September 20, 1990

                              Decided:   December 11, 1990

Filed:

_____
                  Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

On April 7, 1989, Donna A. Samson filed a motion to amend the parties' decree of dissolution requesting the District Court to evaluate and equitably divide Edwin C. Samson's military pension as an asset of the marriage. The Eleventh Judicial District Court, Flathead County, denied Donna's motion and granted summary judgment in favor of Edwin. Donna now appeals the District Court's order. We affirm.

Donna raises the following issue on appeal:

Whether the District Court erred in denying her an equitable share of Edwin's military retirement pension?

Donna and Edwin were married in Great Falls, Montana, on September 17, 1961. At the time of the marriage, Edwin was enlisted in the United States Air Force. The parties had one child, Bruce S. Samson, born September 26, 1964. Edwin retired from the Air Force in February, 1978, after the parties had been married over 16 years.

Donna filed her petition for dissolution in this matter on September 9, 1982. The couple signed a separation and property settlement agreement on March 27, 1983, which made no mention of Edwin's military retirement pension. The agreement provided that Edwin would pay maintenance to Donna in the amount of $450 per month from August 1, 1983, through March 31, 1989. Later, on April 27, 1983, the court entered the parties' decree of dissolution.

Edwin's military pension was considered in determining the amount of maintenance to be paid to Donna, however, the military

pension was not considered or divided as a marital asset at the time of the dissolution. Donna now claims she was unaware that Edwin's military pension was a marital asset at the time of the dissolution and did not learn the fact until early 1989.

Donna filed her motion to amend the decree of dissolution on April 7, 1989, seeking an equitable division and distribution of Edwin's military pension as a marital asset. On January 23, 1990, the District Court denied Donna's motion and granted Edwin's motion for summary judgment finding Donna's claim barred by the doctrine of laches.

Donna claims the District Court erred when it denied her a share in Edwin's military pension. Edwin claims the federal Uniform Services Former Spouses' Protection Act (USFSPA) and case law interrupting this Act, support the District Court's decision to deny Donna a share of his military pension. Furthermore, Edwin contends that Donna accepted maintenance in the place of an actual division of military pension.

The standard that this Court applies in reviewing a grant of summary judgment is the same as that initially utilized by the District Court. McCracken v. City of Chinook (Mont. 1990), 788 P.2d 892, 894, 47 St.Rep. 501, 504. Summary judgment is proper when it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), M.R.Civ.P.; Kelly v. Widner (1989), 236 Mont. 523, 526, 771 P.2d 142, 144; McCracken, 788 P.2d at 894. With this standard in mind, we review the issue presented to this Court.

Whether the District Court erred in denying her an equitable share of Edwin's military pension?

In order to determine this issue, we must review the law surrounding military pensions as an asset of the marital estate.

Prior to 1981, we treated a military pension as a marital asset subject to equitable distribution. In Re the Marriage of Miller (1980), 187 Mont. 286, 609 P.2d 1185. In 1981, the United States Supreme Court, held, in effect, that federal law prevented state courts from dividing military pensions according to state community property or equitable distribution laws. McCarty v. McCarty (1981), 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589. Later, this Court followed the McCarty ruling and held that military retirement pensions were not marital assets subject to distribution by the District Court. In Re the Marriage of McGill (1981), 196 Mont. 40, 41, 637 P.2d 1182.

In direct response to McCarty, on September 8, 1982, Congress enacted 10 U.S.C. § 1408, the Uniform Services Former Spouses' Protection Act (USFSPA). Pursuant to USFSPA, state courts could once again include a military pension in the equitable distribution of the marital estate. One day after the enactment of the USFSPA, Donna filed her petition for dissolution.

The USFSPA took effect in February, 1983. As the District Court notes, "Although the USFSPA took effect on February 1, 1983, Respondent's military pension was not considered or distributed as a marital asset in the Decree of Dissolution entered April 27, 1983." One year later, after the District Court entered the parties' decree of dissolution, this Court re-adopted the federal

4

position set forth in the USFSPA, and once again held that a military pension constitutes a divisible marital asset. In Re the Marriage of Kecskes (1984), 210 Mont. 479, 483, 683 P.2d 478, 480.

Donna, relying on our holding in In Re the Marriage of Waters (1986), 223 Mont. 183, 724 P.2d 726, argues this Court should retroactively award her an equitable portion of Edwin's military pension. In Waters, we considered "the narrow question whether the Uniform Services Former Spouses' Protection Act, 10 U.S.C. § 1408, should be applied retroactively to final decrees of dissolution which were entered subsequent to the United States Supreme Court decision in McCarty v. McCarty but prior to the aforementioned federal statute." Waters, 724 P.2d at 727.

In Waters, McCarty applied and prohibited the District Court from dividing the husband's military pension as a marital asset. Subsequent to the District Court decree entered in Waters, Congress passed the USFSPA. In Waters, we stated:

> The legislative history of the USFSPA indicates that the Act was meant to apply to those spouses who were divorced during the period between McCarty and the Act. "The primary purpose of the bill is to remove the effect of the United States Supreme Court decision in McCarty v. McCarty . . ." 1982 U.S. Code Cong. & Ad. News 1555, 1596. It is also clear that Congress meant the law to apply retroactively.

Waters, 724 P.2d at 730.

In Waters, we held that the USFSPA should be applied retroactively, but we limited our holding to dissolution decrees that were final after the McCarty decision, but before the effective date of the USFSPA. Waters, 724 P.2d at 730. In the present case, the District Court granted the decree of dissolution

5

on April 27, 1983, well outside of the time limitation set forth in Waters.

While our holding in Waters is limited to a specific time frame, we expounded upon the inequity of denying spouses a share of military pensions:

> . . . Those spouses of members of armed forces who obtained dissolutions prior to McCarty were entitled to share in their spouses' military pension. Likewise, those spouses who obtain dissolutions after Kecskes will be entitled to have their spouses' military pension treated as a marital asset. However, those spouses who were divorced during the period between McCarty and Kecskes were denied this right. To forbid those spouses who were divorced during this period from obtaining a modification of their decrees would create a category of people who were denied substantial rights solely because of the unfortunate time within which their decrees happened to be made final. This fate does not befall others similarly situated whose decrees were not or will not be final during that period.

Waters, 724 P.2d at 729-30.

Equity forces this Court to examine Donna's request for a share of Edwin's pension, despite the fact that the couple's decree falls outside of the time limitations set forth in Waters. However, our examination of Donna's request for a share of the military pension is rather brief, since we agree with the District Court that Donna's claim is barred by the doctrine of laches. As we explained in Hereford v. Hereford (1979), 183 Mont. 104, 108, 598 P.2d 600, 602, "[l]aches means negligence to the assertion of the right, and exists where there has been a delay of such duration as to render enforcement of an asserted right inequitable." Furthermore, "[a] complainant can be charged with laches if, but only if he was either actually or presumptively aware of his

6

rights. A complainant is presumptively aware of his rights where the circumstances of which he is cognizant are such as to put a man of ordinary prudence on inquiry." Hereford, 598 P.2d at 602; see also, Clayton v. Atlantic Richfield Company (1986), 221 Mont. 166, 170, 717 P.2d 558, 561; Johnson v. Estate of Shelton (1988), 232 Mont. 85, 90, 754 P.2d 828, 831.

Donna contends the District Court erred in applying the doctrine of laches, since there is no reasonable way that she could have been "actually" or "presumptively" aware of her rights by either the USFSPA or Kecskes. Under the circumstances here, we adopt the District Court's rationale for its application of the doctrine of laches:

> While arguably the USFSPA's enactment and/or effective date placed Petitioner on inquiry, certainly, In re the Marriage of Kecskes, 210 Mont. 479, 683 P.2d 478 (1984), notified Petitioner of her rights regarding the military pension. Regardless, however, Petitioner took no action for five years. Rather, she waited until April of 1989, just after Respondent's maintenance obligation terminated, to seek amendment of the Dissolution Decree.

As the District Court notes in its finding, it would be prejudicial to Edwin to award Donna this late in time a share of the military pension considering that Edwin: (1) did not conceal the pension from Donna; (2) paid maintenance to Donna for six years so that she could receive education or vocational training; and, (3) relied upon his financial obligation to Donna ending in March, 1989.

Donna waited on her rights for an unreasonable period of time, and consequently, her claim to any part of the military pension is

7

barred by the doctrine of laches. Accordingly, we affirm the District Court's summary judgment order.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices