JUSTICE GRAY
dissenting.
I respectfully dissent from the opinion of the majority. I do not feel less sympathy than the majority does for this plaintiff who has gone without a remedy as a result of this Court’s earlier immunity decisions. I, too, would like to “do justice” in this case, if it could be accomplished without upending the vital principle of finality of judgments. Unfortunately, I am unable to find, and the majority does not state, what “extraordinary circumstances” make Rule 60(b)(6)’s “other reason” clause applicable here under controlling precedent. As a result, I cannot agree with the majority’s analysis or result.
The facts pertinent to the issue before us are few. Plaintiff brought suit against three defendants. Summary judgment was granted to two of the defendants in 1989 and to the defendant School District on February 7, 1990. The grant of summary judgment to the School District was based on this Court’s 1990 Eccleston decision interpreting § 2-9-111, MCA. Plaintiff did not appeal.
On February 6, 1990, a summary judgment was entered in favor of another school district in a separate lawsuit, also on the basis of Eccleston. That case was appealed and resulted in this Court’s Crowell decision on January 25, 1991. While not a retreat from the earlier immunity interpretation, we held in Crowell that insurance coverage waived the statutory immunity to the extent of the coverage.
Koch filed a motion for relief from judgment pursuant to Rule 60(b)(5) and (6), M.R.Civ.P., in March 1991; the motion was based on the change in the law in Crowell. The motion was denied by operation of law and Koch appealed, seeking relief from the School District’s February, 1990, summary judgment.
On appeal, Koch first argues that relief from the summary judgment is available under Rule 60(b)(5). This argument is premised on the change in the law from Eccleston to Crowell, together with the assertion that under the Rule it is no longer equitable to give Eccleston prospective application to this case. The majority correctly rejects the Rule 60(b)(5) argument, relying on Libby Rod & Gun Club.
Koch also asserts the availability of relief from judgment under the “other reason” clause contained in Rule 60(b)(6). This argument is also premised on the change in the decisional law. It includes allegations of reliance on the dissent in Eccleston, in which Justice Sheehy *274 noted the “probability” that the real party in interest in Eccleston was an insurer, in deciding not to appeal.
In concluding that the District Court erred in denying appellant’s Rule 60(b)(6) motion, the majority does not mention or address this Court’s seminal and controlling case on Rule 60(b)(6), In re Marriage of Waters (1986), 223 Mont. 183, 724 P.2d 726. Instead, it relies on three easily distinguishable federal cases. The result is a flawed legal analysis which will cause enormous difficulties to parties litigant, the bench, the bar and this Court in the future.
Waters was based on a unique set of facts which made Rule 60(b)(6) relief appropriate. At the time of the initial hearing on the dissolution of the Waters’ marriage, Montana treated military pensions as a marital asset subject to equitable distribution. Before the decree was entered, however, the United States Supreme Court held that federal law precluded state courts from dividing military retirement pay pursuant to state marital asset distribution laws. Bound by the Supreme Court’s decision, the district court concluded in the 1981 dissolution decree that Mr. Waters’ military pension was not a marital asset. No appeal was taken. In 1983, Congress responded to the Supreme Court’s decision by enacting the Uniformed Services Former Spouses’Protection Act (USFSPA); the USFSPA allowed state courts to treat military retirement pay as a marital asset in accordance with state law. The legislative history of the USFSPA indicated Congressional intent to remove the effects of the Supreme Court’s decision entirely, including via retroactive applicability of the Act to the date of that decision. Relying on the USFSPA, Ms. Waters filed a Rule 60(b)(6) motion for relief from judgment. The district court granted the motion and this Court affirmed.
Our decision in Waters was carefully drawn. We noted that the Ackermann test required a party to demonstrate “extraordinary circumstances” justifying relief and concluded that Ms. Waters had met that burden. We noted that it was not the fact that Congress had essentially overridden the Supreme Court in enacting the USFSPA that made the situation unique; rather, it was Congress’ specific intent to accomplish precisely what Ms. Waters was attempting to accomplish through her Rule 60(b)(6) motion that constituted sufficient “extraordinary circumstances.” In so concluding, we were careful to “emphasize the limited nature of this decision; it does not establish a general rule for reopening a final judgment merely because there has been a subsequent change in the law upon which that judgment was based.”
*275 In the case before us, it is the change in decisional law from Eccleston to Crowell which is the real basis for appellant’s Rule 60(b)(6) motion and the majority’s result. As such, that result is in direct derogation of the rule in Waters. Further, while appellant’s asserted reliance on Justice Sheehy’s dissent in Eccleston provides a convenient means to reach the desired end here, it is not and should not be seriously delineated as the basis for the majority’s holding. Speculation as to various interpretations which could have been put on that dissent or on language in any opinion of this Court is an unending game, and should not be adopted by this Court as “good cause” for a party’s decision not to take an appeal and later attempt to seek relief from a judgment. This is particularly so where, as in this case, there was no suggestion whatsoever in the dissent that the “sardonic element” that ah insurer “probably” was the real party in interest was raised as an issue in the case. Finally, whatever interpretations may have been possible, one attorney did appeal an adverse summary judgment based on Eccleston, and that appeal resulted in our Crowell decision on which appellant now wishes to rely in breathing life back into a case long final. What we have here as a basis for relief from judgment, from a legal standpoint, is a change in decisional law. Under Waters, that is not enough.
In addition, while I agree entirely with the statements of law and, indeed, the results in the three federal cases relied on by the majority, those cases are easily distinguishable from the present case. The majority relies first on Overbee which it asserts is germane to the case before us as an example of “extraordinary circumstances” justifying Rule 60(b)(6) relief. I agree that Overbee was such a case and that the circumstances in that case justified relief from the judgment therein; however, Overbee is not germane to the instant case.
In Overbee, the plaintiff appealed several issues to the Ohio Supreme Court, including whether the jury should have been instructed on comparative negligence. During the pendency of that appeal, but before oral argument, the Ohio Court decided a separate case in which it reached a result directly opposite of Overbee’s argument on comparative negligence. As a result, Overbee conceded at oral argument that the court’s very recent decision settled that issue. The court affirmed in part in Overbee’s appeal, but reversed and remanded for an evidentiary hearing on another issue. During the period of remand, but before the evidentiary hearing ordered by the Ohio Supreme Court, that court reversed itself on the comparative negligence question; the reversal occurred within one year of the *276 earlier decision. Plaintiff filed a Rule 60(b)(6) motion, the evidentiary hearing on remand was held, and the trial court then denied the motion for relief from the earlier judgment. The Sixth Circuit held that two factors established the “unique facts” on which it reversed the denial of the Rule 60(b)(6) motion: first, that the judgment in the case was not final at the point in time that plaintiff filed the motion; and second, that if the Ohio Supreme Court had reached its ultimate (second) decision on the comparative negligence question during the pendency of plaintiff’s first appeal, plaintiff clearly would have prevailed on the comparative negligence issue in the first appeal. Thus, extraordinary circumstances existed which, in the view of the Sixth Circuit, mandated Rule 60(b)(6) relief.
The facts in the case before us are not similar to those in Overbee which formed the specific basis for the Sixth Circuit’s decision. Here, the judgment from which relief is now sought was final many months before our Crowell decision; importantly, and unlike the situation in Overbee, no appeal was taken from that judgment. In addition, the Ohio Supreme Court actually reversed itself on the comparative negligence issue which had been raised by Overbee during his first appeal and did so within one year, at a time when Overbee’s case had not reached final judgment. In the case before us, this Court did not reverse Eccleston in deciding Crowell and Crowell was decided nearly a year after the judgment at issue became final.
The majority next quotes a portion of a statement by the Tenth Circuit in Adams for the proposition that “a change in relevant case law by the United States Supreme Court warrants relief under Rule 60(b)(6).” The majority’s failure to quote the entirety of that statement by the Tenth Circuit belies the application of that proposition to this case and makes clear how inapposite Adams is to the case at hand. The Tenth Circuit’s full statement in Adams is “In this circuit, a change in relevant case law by the United States Supreme Court warrants relief under Fed.R.Civ.R 60(b)(6).” (Emphasis added.) The test for Rule 60(b)(6) relief in the Circuit Courts of Appeal based on a change in decisional law by the United States Supreme Court is not related in any way to the issue before this Court. This Court’s test for applying that relief is contained in Waters, discussed above. That test is not met here and, as noted above, the majority does not even recognize the existence of Waters in its opinion.
The majority relies, finally, on Klapprott, a 1949 naturalization case. Again, the majority does not suggest that the facts in that case relate in any way to those before us; for that reason, I will not belabor *277 the obvious. The majority uses Klapprott for the concept that Rule 60(b)(6) is available in the “furtherance of justice.” Again, the majority ignores its own Waters rule in order to “do justice” in this case.
It is my view that “extraordinary circumstances” do not exist in this case to invoke Rule 60(b)(6) relief. This case involves a change in decisional law which is not sufficient under Waters to support relief from judgment under the “other reason” clause of Rule 60(b)(6). The majority having opened the door in Montana to the premise that motions for relief from judgment under Rule 60(b)(6) are now available to “do justice,” with nothing more required, I do not look forward to the task of trying to keep that premise contained or limited. The days of finality of judgments in Montana are gone.
I will comment only briefly on the majority’s discussion of the statutory changes in the area of governmental immunity. The majority states that the 1991 amendments are “dispositive” and render the parties’ arguments on immunity moot. The majority’s statement is correct, but only because the majority itself has inappropriately breathed life back into a judgment which has been final for over two years. Absent that action, it is clear that the 1991 amendments would be inapplicable to this case by virtue of the legislature’s clear and stated intent to make the amendments applicable only to those cases which were not final by May 24, 1991.
JUSTICE WEBER joins in the foregoing dissent of JUSTICE GRAY.