2 F.3d 1157
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PENNINGTON'S, INC., Plaintiff-Appellant,
v.
BROWN-FORMAN CORPORATION, Defendant-Appellee.
 No. 92-35243.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 6, 1993.*
Decided Aug. 11, 1993.
 
 1
 Before: BEEZER and HALL, Circuit Judges, and CONTI, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Pennington's, Inc. ("Pennington's") appeals the district court's grant of summary judgment in favor of the Brown-Forman Corporation ("Brown-Forman") in Pennington's breach of contract action. The district court had jurisdiction pursuant to 28 U.S.C. Sec. 1332. This court has jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 
 4
 * Pennington's contends that Brown-Forman violated the covenant of good faith and fair dealing implicit in the parties' distributorship agreement by terminating the agreement without cause. Pennington's argues that Brown-Forman was required to provide it more than the thirty day notice period stipulated in the contract to mitigate the effect of the termination. We find this claim unpersuasive.
 
 
 5
 The termination clause of the parties' contract clearly states: "Either party may terminate this agreement in its sole discretion with or without cause at any time by giving the other party thirty (30) days written notice of termination, except as otherwise required by law." It is well established under both California and Montana law that the implied covenant of good faith and fair dealing can not override express contractual terms.[1] See Carma Developers v. Marathon Development California, 6 Cal.Rptr.2d 467, 484 (Cal.1992); Farris v. Hutchinson, 838 P.2d 374, 377 (Mont.1992). Thus, the district court correctly found that Brown-Forman did not violate the implied covenant of good faith and fair dealing by terminating the distributorship agreement without cause.
 
 
 6
 Pennington's relies on several older cases to support its argument concerning the implied covenant of good faith. See Kelly-Springfield Tire Co. v. Bobo, 4 F.2d 71 (9th Cir.1925); J.C. Millett Co. v. Park & Tilford Distillers Corp., 123 F.Supp. 484 (D.C.Cal.1954); Jack's Cookie Co. v. Brooks, 227 F.2d 935 (4th Cir.1955); Hunt Foods v. Phillips, 248 F.2d 23 (9th Cir.1957). These cases are distinguishable, however, because they involved contracts that did not contain termination clauses which expressly allowed either party to terminate at will. By arguing that these cases control in the instant case, Pennington's asks us to prohibit Brown-Forman from doing that which is expressly permitted by the distributorship agreement. We refuse to follow this approach.
 
 II
 
 7
 Pennington's also argues that summary judgment was inappropriate because it is unclear whether the termination clause contains a good cause requirement. Pennington's alleges that at the time the parties entered into the distributorship agreement, Brown-Forman gave oral assurances that the agreement would only be terminated for good cause. Pennington's did not argue that the termination provision is ambiguous before the district court. Because we generally do not reach issues raised for the first time on appeal, we decline to entertain this claim here. United States v. Smith, 905 F.2d 1296, 1302 (9th Cir.1990); Komatsu, Ltd. v. States Steamship Co., 674 F.2d 806, 812 (9th Cir.1982).
 
 III
 
 8
 In its reply brief, Pennington's argues that the phrase "except as otherwise required by law" in the termination clause incorporates the Montana Alcoholic Beverages Act, Mont.Code Ann. Sec. 16-3-201 et seq. (1991). This statute requires 60 days notice before a distributorship agreement between a beer brewer and wholesaler can be terminated. Mont.Code Ann. Sec. 16-3-221 (1991). Because Brown-Forman did not give 60 days notice before terminating the distributorship agreement, Pennington's argues that it breached the agreement.
 
 
 9
 Pennington's raises this argument for the first time in its reply brief. Ordinarily, we do not consider claims raised for the first time in a reply brief. Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir.1990). In any event, Pennington's argument is meritless. By its own terms, the Montana Alcoholic Beverages Act only governs the termination of beer distributorships. This case involved the distribution of wine products. Thus, if we applied the Act's protections in this case we would expand the scope of that statute in violation of its plain language. We are not empowered to take such action.
 
 IV
 
 10
 Pennington's final claim is that the termination clause is unconscionable and should not be given effect as written. This claim is meritless.
 
 
 11
 We start by emphasizing that several courts have held that termination provisions similar to the one at issue here are not unconscionable. For example, in Premier Wine & Spirits v. E. & J. Gallo Winery, 644 F.Supp. 1431 (E.D.Calif.1986), the court held that a distributorship agreement which allowed either party to terminate without cause upon thirty days notice was not unconscionable. Id. at 1440. See also Communications Maintenance, Inc. v. Motorola, Inc., 761 F.2d 1202, 1209 (7th Cir.1984) (upholding the district court's refusal "... to employ the unconscionability doctrine to avoid the thirty day notice termination provision"); Sports and Travel Marketing, Inc. v. Chicago Cutlery Co., 811 F.Supp. 1372, 1380-81 (D.Minn.1993) (distributor agreement allowing either party to terminate "in its sole discretion" upon thirty days notice not unconscionable); Oreman Sales, Inc. v. Matsushita Electric Corp. of America, 768 F.Supp. 1174, 1182 (E.D.La.1991) (distributor agreement allowing mutual termination without cause upon thirty days notice not unconscionable); RJM Sales & Marketing v. Banfi Products Corp., 546 F.Supp. 1368, 1375 (D.Minn.1982) (mutual thirty day termination provision not unconscionable).
 
 
 12
 Analysis of California and Montana law leads to the same conclusion in the instant case. Under California law, unconscionability has both a "procedural" and a "substantive" element. Premier Wine, 644 F.Supp. 1431, 1440; A & M Produce Co. v. FMC Corp., 186 Cal.Rptr. 114, 121-22 (Cal.App. 4 Dist.1982). Procedural unconscionability consists of an absence of meaningful choice by one party due to oppression and surprise. Substantive unconscionability occurs when the contract terms result in overly harsh or one-sided results, or when the risks of the bargain are allocated in an objectively unreasonable or unexpected manner. A & M Produce, 186 Cal.Rptr. at 122.
 
 
 13
 The district court correctly concluded that the distribution agreement was not procedurally unconscionable. First, Pennington's was not surprised by contract terms "hidden in a prolix printed form." Id. Pennington's has never claimed that it was unaware of the termination provision in the contract.
 
 
 14
 Second, Pennington's fails to demonstrate oppression. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Id. Pennington's asserts that it was not in a position to bargain with a manufacturer of Brown-Forman's financial strength, but financial disparity between parties does not necessarily preclude bargaining, and Pennington's offers no explanation as to why Brown-Forman's net worth prevented Pennington's from pursuing negotiations. Pennington's claim of oppression is further undermined by the fact that it is a sophisticated business entity which has entered distributor agreements in the past. Finally, Pennington's does not explain why, having failed to negotiate, it could not reject the contract and enter into a distributorship agreement with another manufacturer. See Premier Wine, 644 F.Supp. at 1440 (distributor with alternate product line choices not oppressed); Sports and Travel Marketing, Inc. v. Chicago Cutlery Co., 811 F.Supp. at 1380 (distributor did not lack meaningful choice to reject contract because it was free to contract with other manufacturers).
 
 
 15
 The distributorship agreement is also not substantively unconscionable. Far from being one-sided, it reasonably allocates the potential risk of unprofitability between the two parties. Gilchrist Machinery Co., Inc. v. Komatsu America Corp., 601 F.Supp. 1192, 1201 (S.D.Miss.1984). Both Pennington's and Brown-Forman enjoyed the right to terminate the distributorship agreement at will. This placed Pennington's in a desirable position because it had the option of entering into a more advantageous contract with another manufacturer at any time. See Corenswet, Inc. v. Amana Refrigeration, Inc., 594 F.2d 129, 138-39 (5th Cir.1979).
 
 
 16
 Montana law also does not support Pennington's claim that the termination clause in the distributorship agreement is unconscionable. Although Montana courts do not apply a structured test when evaluating an unconscionability claim, they consider essentially the same factors as the courts in California:
 
 
 17
 "While no single factor is determinative, elements which may be indicators of unconcionability (sic) include unequal bargaining power, lack of meaningful choice, oppression, and exploitation of the weaker party's vulnerability or lack of sophistication."
 
 
 18
 Kelly v. Widner, 771 P.2d 142, 145 (Mont.1989). We have already determined that none of these factors supports Pennington's claims of unconscionability. Thus, we conclude that the termination clause in the distributorship agreement is not unconscionable under either California or Montana law.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Samuel Conti, Senior District Judge, Northern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The parties disagree as to whether the substantive law of California or Montana governs this dispute. The district court did not resolve this issue, but instead evaluated Pennington's contentions under the laws of both states. Since we have insufficient information to decide the choice of law question, we follow the district court's approach