No. 85-338

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

VERNON WESTLAKE, Personal Representative
of the Estate of Harry D.R. Larson,
Deceased,

        Plaintiff and Appellant,

-vs-

CHARLES R. OSBORNE and LOIS MARIE
OSBORNE, husband and wife, and
DENNIS HARDIN,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        H. A. Bolinger, Bozeman, Montana

    For Respondent:

        Gregory O. Morgan, (Osborne), Bozeman, Montana
Corette, Smith, Pohlman, & Allen; Marshal L.
Mickelson, (Hardin), Butte, Montana

---

Submitted on Briefs: Nov. 29, 1985

Decided: February 5, 1986

Filed:   FEB  5 1986

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appellant, Vernon Westlake, personal representative of the Estate of Henry Larson, appeals from the judgment of the District Court, Eighteenth Judicial District, County of Gallatin, entered following the court's order granting the motions for summary judgment of respondents, Charles and Marie Osborne, and Dennis Hardin. We affirm.

The record of this case, as contained in the depositions on file, shows that Charles Osborne and the deceased, Harry Larson, were friends. The two agreed that they would enter into sale and lease back agreements with regard to real property owned by Larson and used as his residence.

Sometime in the latter part of February 1982, the two men sought the assistance of Dennis Hardin, a licensed real estate broker and investment counselor to assist them in the transaction. Both men had dealt with Hardin in the past. They told Hardin that they had struck a bargain with regard to the sale of the Larson residence. Hardin then elicited the details of the transaction from them and explained that they would need title insurance and proper agreements drafted by an attorney. Hardin then relayed the details of the transaction to Ed Sedivy, the attorney who drafted the agreements. The documents prepared by Sedivy were thoroughly reviewed by Larson and Osborne.

Larson's title was subject to an unpaid balance of $3,200 on a $6,000 mortgage owing to Larson's sister, Ella Westlake. Appellant, Vern Westlake, is the son of Ella Westlake and the nephew of Larson.

Due to the existing mortgage on the property, Hardin telephoned Ella Westlake prior to closing the transaction. She told Hardin to consult her son. After learning of the transaction from Hardin, Vern Westlake contacted Larson and Larson told him that he wanted to sell his house to get his financial affairs straightened out and that it wasn't really any of Westlake's business.

Prior to closing, Larson, Vern Westlake, Ella Westlake and Hardin met in Hardin's office. At that time Vern Westlake asked Larson if he was sure he knew what he was doing and explained that if he was in a financial bind Ella Westlake would refinance the note and mortgage she held on the property. Larson told Vern Westlake that all he was really interested in was getting his sister's mortgage off the property.

The sale and lease back agreements were signed on March 1, 1982. The terms of the sale were as follows:

1. Purchase Price. Buyer agrees to pay and Seller agrees to accept, as payment in full for the property above referred to, the total sum of $16,650.00 which sum shall be paid as follows:

A. The sum of $4,050.00, the receipt whereof is hereby acknowledged.

B. The balance in the sum of $12,600.00 shall be paid at the rate of $350.00 per month for thirty-six (36) months, which shall be satisfied by Seller's leasing said property and remaining in possession for thirty-six (36) months. A copy of said lease is attached as Exhibit "A". It is understood that this lease is not assignable by Seller as Tenant, and shall terminate upon death of Tenant. In the event of such termination, if prior to the thirty-six month period, the unpaid balance of this purchase price shall be deemed satisfied. (Emphasis added.)

The closing of the transaction took place on March 5, 1982. At that time, Larson was 78 years old and in poor health, having suffered from heart difficulties since 1979.

The closing itself was handled by Teddy Annear of Gallatin Title Company. The day before the closing, Larson asked Annear to conduct the closing in such a manner that the Westlakes would not know about the terms of the sale. Thus, the closing was a bifurcated transaction. First, Ella Westlake was paid the balance of her debt which was secured by Larson's property and then the actual closing of the transaction took place.

At the closing Annear observed that Larson was alert and aware of what was going on around him, that he did not appear to be confused or upset about the transaction, and that he appeared to understand what he was doing. Hardin was also of the opinion that Larson's age and health had no effect on his mental state.

Both Ella Westlake and Vern Westlake learned of the transaction prior to Larson's death on November 9, 1982. After Larson's funeral Charles Osborne called Vern Westlake and asked when Larson's personal property would be removed from the residence, as he intended to take possession pursuant to the agreement. Vern Westlake refused Osborne access to the property.

Thereafter, Vern Westlake, as Larson's personal representative, brought this action to set aside the contract of sale, deed and lease back alleging fraud, undue influence and unconscionability. Following discovery, motions for summary judgment were filed by both the Osbornes and Hardin. Orders granting both motions for summary judgment were granted and a final entry of judgment was entered whereupon Westlake appealed.

Westlake raises two issues on appeal:

- 4 -

1.  Whether the District Court erred in granting summary judgment to respondent, Dennis Hardin; and

2.  Whether the District Court erred in granting summary judgment to the respondents, Charles and Lois Osborne.

With regard to all the respondents, Westlake claims that summary judgment was improper because of factual issues present in the case. It is true that the party moving for summary judgment has the burden of establishing the absence of any genuine issue of material fact, and the party opposing the motion must supply evidence supporting the existence of a genuine issue of material fact. Pretty on Top v. City of Hardin (1979), 182 Mont. 311, 315, 597 P.2d 58, 60. The general purpose of Rule 56, M.R.Civ.P., is to eliminate unnecessary trial, delay and expense. The purpose of the hearing on the motion is not to resolve factual issues, but to determine whether there is any genuine issue of material fact in dispute. The opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy nor merely suspicions. Silloway v. Jorgenson (1965), 146 Mont. 307, 310, 406 P.2d 167, 169. Implications based upon what Vern Westlake thought are not enough. Cheyenne Western Bank v. Young (1978), 179 Mont. 492, 497, 587 P.2d 401, 404.

With regard to both the Osbornes and Hardin, Westlake raises no genuine issue of material fact. Vern Westlake's own deposition removed all doubt as to whether there was a genuine issue of fact. The deposition reveals the following with regard to Hardin:

> Q. Do you have any testimony or any evidence that you can tell me about here or refer me to that lead you to conclude that Mr. Hardin acted in some sort of a conspiracy with the Osbornes to cheat or defraud Harry Larson? A. Honestly I can't say that I have any more than an opinion derived from reading the agreement, knowing that Mr. Hardin

acted as an agent or an arranger for the Osbornes and for Harry to get my mother and I in there to do the final settlement. Now that's my basis.

With regard to the Osbornes, Westlake's deposition contains the following questions and answers:

Q. So, would it be fair to say that the basis of your complaint against the Osbornes is an opinion derived from reading the agreement. A. Based on the agreement.

Q. Okay. As I recall your testimony with Mr. Pohlman, and I think I'm quoting it accurately because I wrote it down here. "I'm basing everything on the fact that this is a poor, unethical contract." Would that be fair? A. That would be fair.

Aside from Westlake's "opinion" there is no genuine issue of material fact that appears of record. Westlake, however, does list several factual issues in conclusory fashion in his brief. As stated above, this is not an appropriate means of opposing a motion for summary judgment. We hold that the District Court did not err in granting summary judgment.

Having determined that summary judgment was proper, we must now determine whether the respondents were entitled to judgment as a matter of law.

Westlake first contends that the transaction in this case should be set aside under theories of constructive fraud and undue influence. Montana has codified the common law principles of constructive fraud at section 28-2-406, MCA, which provides:

Constructive fraud consists in:

(1) any breach of duty which, without an actual fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or

(2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

- 6 -

What constitutes undue influence is stated at section 28-2-407, MCA, which provides:

> Undue influence consists in:
>
> (1) the use by one in whom a confidence is reposed by another or who holds a real or apparent authority over him of such confidence or authority for the purpose of obtaining an unfair advantage over him;
>
> (2) taking an unfair advantage of another's weakness of mind; or
>
> (3) taking a grossly oppressive and unfair advantage of another's necessities or distress.

We hold that both of Westlake's claims--constructive fraud and undue influence--have no basis in fact in this case as to any of the respondents. See Turley v. Turley (1982), 199 Mont. 265, 274-75, 649 P.2d 434, 438-39.

Westlake next contends that the sales agreement between Larson and the Osbornes was unconscionable. Westlake bases his contention on the language of the agreement, cited above, that cancelled the Osbornes' monthly installment payments of $350.00 upon the death of Larson.

This Court in the past has looked to the official comment to section 2-302 of the U.C.C. for the basic test for unconscionability. All State Leasing v. Top Hat Lounge (1982), 198 Mont. 1, 6, 649 P.2d 1250, 1252-53. The official comment to section 2-302 of the U.C.C. suggest the following test:

> [W]hether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract . . . The principle is one of the prevention of oppression and unfair surprise.

There is no evidence in this case outside of Vern Westlake's "opinion" that points to any oppression, prejudice, or unfair surprise. It appears that what Westlake is really

challenging is the sufficiency of consideration for the cancellation of the Osborne's indebtedness upon Larson's death. But insufficient consideration or inadequacy of consideration are not grounds for setting aside or refusing to enforce a contract. Hodgkiss v. Northland Petroleum Consol. (1937), 104 Mont. 328, 334, 67 P.2d 811, 814; Pederson v. Thoeny (1930), 88 Mont. 569, 576, 295 P. 250, 252. Westlake had the burden to raise facts from which reasonable men might conclude that there was oppression, prejudice or unfair surprise. Having failed to do this, summary judgment against Westlake and in favor of respondents was proper on this issue.

Westlake last contends that the District Court considered improper evidence in granting Hardin's motion for summary judgment. Westlake argues that the District Court relied on improper hearsay testimony of Hardin to conclude that Larson and Osborne had an agreement negotiated and finalized prior to Hardin's involvement. We find this argument unavailing because, as Hardin points out, there was other testimony by Charles Osborne by which the District Court could have reached the same conclusion. Osborne's testimony was not subject to a hearsay objection.

We affirm the District Court.

_____
Justice

We Concur:

_____

- 8 -

_____

_____

_____
Justices