DA 12-0346

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 208

KATHLEEN C. FISHER, a Limited Conservator
for the Estate of SHARON McCARTNEY, a
protected person, SHARON McCARTNEY,
and LESLIE D. McCARTNEY,

      Plaintiffs and Appellees,

    v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a Delaware
Corporation, and STATE FARM FIRE
AND CASUALTY COMPANY,

      Defendants, Cross-claim Defendants
      and Appellants.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and For the County of Gallatin, Cause No. DV 09-584B
                Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Robert F. James; Cathy J. Lewis (argued); Ugrin, Alexander, Zadick
            & Higgins, P.C.; Great Falls, Montana

      For Appellees Kathleen Fisher and Sharon McCartney:

            Travis W. Kinzler (argued); Julieann McGarry; Cok Kinzler, PLLP;
            Bozeman, Montana

      For Appellee Leslie McCartney:

            William R. Bieler (argued); Burk, Lee & Bieler, PLLC; Choteau, Montana

            Lyman H. Bennett, III; Attorney at Law; Bozeman, Montana

      For Amicus Property Casualty Insurers Association of America and National
      Association of Mutual Insurance Companies:

            Martha Sheehy (argued); Sheehy Law Firm; Billings, Montana

For Amicus Montana Trial Lawyers Association:

Amy Poehling Eddy; Bottomly Eddy & Sandler, PLLP;
Kalispell, Montana

Gregory S. Munro; Attorney at Law; Missoula, Montana

Argued and Submitted:  February 20, 2013
Decided:  July 30, 2013

Filed:

Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Sharon McCartney (Sharon) and Leslie McCartney (Les), wife and husband, sought declaratory relief that Les's umbrella policy with State Farm Fire and Casualty Company (State Farm) provided coverage for injuries sustained by Sharon as a result of Les's negligent driving. State Farm answered that there was no coverage for Sharon's claim due to a family member exclusion in the umbrella policy. The Eighteenth Judicial District Court, Gallatin County, concluded that the policy was not ambiguous, did not violate the McCartneys' reasonable expectations, and did not violate Montana public policy, but that the exclusion was unconscionable. The District Court entered summary judgment in favor of the McCartneys.

¶2 State Farm appeals. In their arguments, both State Farm and the McCartneys challenge portions of the District Court's orders.[1] State Farm argues that the District Court's unconscionability determination is erroneous and should be reversed, and summary judgment be entered in its favor. McCartneys argue that the District Court's entry of summary judgment in their favor should be affirmed, but that this Court should "reverse the District Court's ruling regarding ambiguity and direct it to enter an order declaring that the family member exclusion at issue . . . . is ambiguous and violates the McCartneys' reasonable expectations," thus arguing that the District Court erred by not entering judgment in their favor on additional grounds. To address the parties'

---

[1] The District Court entered separate summary judgment orders for Les and Sharon. The McCartneys have filed separate briefs on appeal. We refer herein to the McCartneys' arguments as made jointly.

3

arguments, and because the issues are interrelated, we take up the issues in the following order:

¶3    *1. Did the District Court err by concluding that the Umbrella Policy unambiguously excluded Sharon's claim from coverage and that the Family Member Exclusion did not violate the McCartneys' reasonable expectations?*

¶4    *2. Did the District Court err by concluding that the Family Member Exclusion did not violate Montana public policy?*

¶5    *3. Did the District Court err by concluding that the Family Member Exclusion was unconscionable?*

¶6    Upon review of these issues, we reverse the judgment of the District Court.

## FACTUAL AND PROCEDURAL BACKGROUND

¶7    On December 30, 2007, Les and Sharon were involved in a motor-vehicle accident near Townsend. Les was driving his vehicle when he negligently struck a vehicle parked on the side of the road. Sharon, a passenger in Les's car, sustained serious injuries.

¶8    Les has two insurance policies pertinent to this dispute. The first is Les's State Farm Automobile Liability Policy (Auto Policy), which provided bodily injury limits of $250,000 per person and $500,000 per accident. Les paid an annual premium of $289.16 for this coverage. The second policy is Les's State Farm Personal Liability Umbrella Policy (Policy or Umbrella Policy), with a stated limit of $2,000,000. Les paid an annual premium of $201 for this coverage.

¶9    State Farm paid Sharon the full per-person bodily injury liability limit of $250,000 under the Auto Policy for the injuries she received as a result of the accident. State Farm denied Sharon's claim to additional coverage for her injuries under the Umbrella Policy

4

because that policy excluded claims brought by Les's relatives who lived with him pursuant to an exclusion denominated by the parties as the Family Member Exclusion.

¶10 Sharon sought a declaratory judgment that she was entitled to coverage for her injuries under the Umbrella Policy. Les sought the same relief. The McCartneys argued that the exclusion was unenforceable because it was ambiguous, violated Montana public policy, violated their reasonable expectations of coverage, and was unconscionable. State Farm answered that Sharon's claim was properly excluded by the Family Member Exclusion. The District Court granted summary judgment to the McCartneys, holding the Exclusion was unconscionable because it denied coverage to family members, a class of victims the District Court reasoned was most likely to need coverage:

> "[This innocent class of victims] is exposed to negligent operation of the covered vehicle more than included victims, because typical family relations require family members to ride together on the way to work, church, school, social functions, or family outings. Thus, these individuals cannot practically avoid exposure to the risk for which they [are] uninsured. [This is unconscionable.]"

(Quoting *Safeco Ins. Co. of Ill. v. Auto. Club Ins. Co.*, 31 P.3d 52, 54-55 (Wash. App. 2001)) (brackets in District Court Order).

## STANDARD OF REVIEW

¶11 We review de novo a district court's grant or denial of summary judgment, applying the same criteria as the district court. *Modroo v. Nationwide Mut. Fire Ins. Co.*, 2008 MT 275, ¶ 19, 345 Mont. 262, 191 P.3d 398. The District Court's interpretation of an insurance contract is a question of law this Court reviews de novo. *Stutzman v. Safeco Ins. Co. of Am.*, 284 Mont. 372, 376, 945 P.2d 32, 34 (1997).

5

## DISCUSSION

¶12    *1.    Did the District Court err by concluding that the Umbrella Policy unambiguously excluded Sharon's claim from coverage and that the Family Member Exclusion did not violate the McCartneys' reasonable expectations?*

¶13    When interpreting an insurance contract, we accord the usual meaning to the terms and the words used, and we construe them using common sense. *Modroo*, ¶ 23. The Umbrella Policy contains the following pertinent policy provisions, with bolded words defined:

> COVERAGE L — PERSONAL LIBIABILITY
> If a claim is made or suit is brought against an **insured** for damages of a loss for which the **insured** is legally liable and to which this policy applies, **we** will pay on behalf of the insured, the damages that exceed the retained limit.
>
> .    .    .
>
> EXCLUSIONS
> There is no coverage under this policy for any:
> 13. **bodily injury** or **personal injury** to any **insured** as defined in part
>      a . . . . of the definition of **insured**[.]

Thus, the Policy generally covers claims in excess of the insured's primary insurance but does not cover claims brought by an insured. The Policy defines who is an insured:

> DEFINITIONS
> **"insured"** means:
>      a. **you** and **your relatives** whose primary residence is your household[.]
>
> .    .    .
>
> **"relative"** means any person related to you by blood, adoption, or marriage.
>
> .    .    .
>
> **"you"** and **"your"** mean the person or persons shown as the "Named Insured" on the declarations page. If a named insured shown on the declarations page is a human being then you and your includes the spouse of the first person listed as the named insured if the spouse resides primarily with that named insured.

6

Les was issued the Umbrella Policy and is named on the declarations page. Applying the definitions of "you" and "your," he is an insured. "Relative" is defined by the policy as "any person related to you by blood, adoption, or marriage." Sharon is related to Les by marriage. *See also Stutzman*, 284 Mont. at 379-80, 945 P.2d at 36 ("In accordance with prevailing case law, and applying a common sense interpretation of the terms at issue, we conclude that the average consumer of insurance would, in reading the [policy], conclude that the term 'relative' includes reference to his or her spouse.").[2] Sharon is an "insured" by virtue of being Les's relative who primarily resides with him. The Umbrella Policy excludes Sharon's claim because, under the Family Member Exclusion, there is no coverage for bodily injury sustained by an insured.

¶14 Having determined that the Umbrella Policy facially excludes coverage for Sharon's bodily injuries, we next consider if public policy or principles of contract interpretation prohibit the enforcement of the exclusion. *See Augustine v. Simonson*, 283 Mont. 259, 264, 940 P.2d 116, 119 (1997). We first address principles of contract interpretation under this issue, and then turn to principles of public policy under Issue 2.

¶15 The interpretation of an insurance contract is a question of law. *Modroo*, ¶ 23. "We accord the usual meaning of the terms and the words in an insurance contract, and we construe them using common sense." *Modroo*, ¶ 23. An insurance contract is ambiguous if it is "'reasonably subject to two different interpretations.'" *Modroo*, ¶ 23

---

[2] In *Stutzman*, Justices Leaphart and Hunt dissented from the majority's conclusion that the term "relative" includes one's spouse. *Stutzman*, 284 Mont. at 382, 945 P.2d at 38 (Leaphart & Hunt, JJ., dissenting). Here, the Umbrella Policy avoids this issue by specifying that "relative" includes relationships of both consanguinity (by blood) and affinity (by marriage).

(quoting *Mitchell v. State Farm Ins. Co.*, 2003 MT 102, ¶ 26, 315 Mont. 281, 68 P.3d 703). Whether a provision of an insurance contract is "reasonably susceptible to two different interpretations," is determined from "the viewpoint of a consumer with average intelligence, but untrained in the law or the insurance business." *Modroo*, ¶ 23. However, a provision is not ambiguous "just because a claimant says so or just because the parties disagree as to [its] meaning . . . ." *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 32, 354 Mont. 15, 221 P.3d 666 (internal citations omitted); *Johnson v. Eq. Fire & Mar. Ins. Co.*, 142 Mont. 128, 131, 381 P.2d 778, 789 (1963). "Courts should not . . . 'seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract.'" *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 2005 MT 50, ¶ 17, 326 Mont. 174, 108 P.3d 469 (internal citation omitted). Because insurers draft the language of insurance contracts and the object of an insurance contract is to give protection to the insured, we construe ambiguous provisions "against the insured and in favor of extending coverage." *Modroo*, ¶ 23.

¶16 The McCartneys first argue that the Umbrella Policy is ambiguous because, although it excludes claims brought by relatives of the person(s) listed as a "named insured" on the declaration page, the term "named insured" itself does not also appear on the declaration page. While the McCartneys are correct that the term "named insured" does not appear on the declaration page, "named insured" has a common sense meaning: it refers to the party the insurance policy was issued to cover. The policy refers to that

8

party by name. *See* 6C Appleman, *Insurance Law & Practice*, § 4354, at 51 (West Publishing Co., 1979) ("Whenever the term 'named insured' is employed, it refers only to the person specifically designated upon the face of the contract[.]"); *Waller v. Rocky Mt. Fire & Cas. Co.*, 535 P.2d 530, 534 (Or. 1975) ("Wherever the description 'named insured' is used, the only person named in the declarations of the policy is meant."). Here, the Umbrella Policy was issued to Les E. McCartney and Frances D. McCartney.[3] The Policy further directs that the named insureds are the person(s) listed on the declaration page, and the names of Les E. McCartney and Frances D. McCartney are listed there. Thus, Les E. McCartney and Frances D. McCartney are clearly the "named insureds" under the Umbrella Policy, and there is no ambiguity.

¶17    The McCartneys also argue the Family Member Exclusion is ambiguous because the Policy uses the term "spouse" in the definition of "you and your," but does not likewise use "spouse" in the definition of "relative." McCartneys argue that this discrepancy could lead an average person to believe that a "spouse" is not a "relative" within the meaning of the Umbrella Policy. However, the Policy's definition of "relative" is "any person related to you by blood, adoption, or marriage." Here again, the terms are clear. Although the term "spouse" is not included within the definition of "relative," a common sense reading of this provision leaves only one reasonable meaning: that one related by "marriage" is also a "spouse." *See Merriam-Webster's Collegiate Dictionary, Tenth Edition* 1138 (Merriam-Webster, Inc. 1998) (spouse:

---

[3]  Frances is Les's mother.

9

"married person:  husband, wife").  Under the Policy's definitions, Sharon is both Les's "spouse" and his "relative," and there is no ambiguity.

¶18    McCartneys further contend the District Court erred by holding the Umbrella Policy did not violate their reasonable expectations.  The District Court concluded that, because the exclusion "clearly" excluded Sharon from coverage, any expectation that a claim brought by Sharon would be covered was not "objectively reasonable."  The McCartneys argue that the Exclusion is not sufficiently "clear" because an average person reading the policy would not be able to navigate the Umbrella Policy and the declaration page to effectively discern that Sharon was excluded from coverage.

¶19    The question of whether a provision is sufficiently "clear" to render the reasonable expectations doctrine inapplicable is a different question than whether a provision is ambiguous.  If the reasonable expectations doctrine only applied when a provision was ambiguous, there would be no need for the doctrine, as Montana law independently construes ambiguous provisions against the insurer and in favor of coverage.  *C.f. Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1050 (Colo. 2011) (en banc) ("[T]he doctrine of reasonable expectations applies when policy coverage-provisions may not be ambiguous in a technical sense, and hence subject to the rule that ambiguities must be construed against the drafter . . . .").  However, a finding that a provision "unambiguously precludes coverage" is a factor to be considered in determining whether it violates reasonable expectations.  *Am. Family Mut. Ins. Co. v. Livengood*, 1998 MT 329, ¶ 38, 292 Mont. 244, 970 P.2d 1054.

¶20 We first recognized the reasonable expectations doctrine in *Transamerica Ins. Co. v. Royle*, 202 Mont. 173, 656 P.2d 820 (1983): "'The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.'" *Royle*, 202 Mont. at 180-81, 656 P.2d at 824 (quoting Robert E. Keeton, *Insurance Law Rights Variance with Policy Provisions*, 83 Harvard L. Rev. 961, 967 (1970)). However, "the reasonable expectations doctrine is inapplicable where the terms of the policy at issue clearly demonstrate an intent to exclude coverage." *Livengood*, ¶ 33 (citing *Wellcome v. Home Ins. Co.*, 257 Mont. 354, 359, 849 P.2d 190, 194 (1993)). "The reason, of course, is that 'expectations which are contrary to a clear exclusion from coverage are not "objectively reasonable."'" *Livengood*, ¶ 33 (quoting *Wellcome*, 257 Mont. at 359, 849 P.2d at 194).

¶21 In *Livengood*, a coverage exclusion in an automobile liability policy was challenged as violating the reasonable expectations doctrine. Henninger was driving her roommate's vehicle when she negligently caused an accident, injuring the Livengoods. Henninger's automobile liability policy on her own vehicle contained a nonowned automobile/household exclusion that excluded coverage for injuries arising from her use of a vehicle "owned by or furnished or available for regular use by you or any resident of your household." *Livengood*, ¶¶ 16-17. Livengoods argued the exclusion violated the reasonable expectations of Henninger, the insured. This Court unanimously upheld the exclusion, reasoning that the provision "clearly demonstrate[d] an intent to exclude

11

coverage while Henninger was using a vehicle owned by . . . a resident of her household, and any expectation by Henninger to the contrary would not be objectively reasonable." *Livengood*, ¶ 38 (citing *Stutzman*, 284 Mont. at 381, 945 P.2d at 37).

¶22    The Family Member Exclusion here is similarly clear.   The Umbrella Policy exclusion provides that "no coverage" is available for "bodily injury or personal injury to any insured."   As demonstrated above, Sharon is an "insured" under the Policy.   These provisions "clearly demonstrate an intent to exclude coverage" for Sharon's claim. *Livengood*, ¶ 33.

¶23    McCartneys urge that necessary clarity would have been provided had State Farm simply stated: "NOTICE: THIS POLICY PROVIDES NO LIABILITY COVERAGE TO YOUR SPOUSE."   However, this simple proposed clarification is incorrect.   The Policy *does* provide liability coverage to Sharon.   She is an insured, and the Policy provides excess liability protection to Sharon "if a claim is made or suit is brought against" her by a third party.   *See Rowe*, 245 Mont. at 417, 800 P.2d at 160 ("excess coverage of an umbrella or catastrophe policy protects an insured . . . against liability from third parties").   Regarding McCartneys' arguments about having to navigate the Policy, there is nothing unusual about a policy that requires the insured to read the exclusion section, the definition section, and the declaration page to determine the scope of coverage.   *See e.g. Meyer v. State Farm Mut. Auto. Ins.*, 2000 MT 233, ¶¶ 8-11, 303 Mont. 1, 15 P.3d 899 (upholding exclusion in auto liability policy that required insured to review the definition section, the exclusion section, and the declaration page).   A person of average

intelligence would be able to determine that claims made by Sharon against Les were excluded by a review of these provisions of the Policy, and any expectation of coverage to the contrary was not objectively reasonable, as the District Court correctly concluded.

¶24   *2. Did the District Court err by concluding that the Family Member Exclusion did not violate Montana public policy?*

¶25   Insurance agreements are contracts that are subject to general rules of contract law. *Ribi Immunochem*, ¶ 17. Unambiguous insurance provisions are to be enforced unless the provision violates public policy or is against good morals. *Hein v. Fox*, 126 Mont. 514, 520, 254 P.2d 1076, 1079 (1953); *Youngblood v. Am. States Ins. Co.*, 262 Mont. 391, 395, 866 P.2d 203, 205 (1993); *Modroo*, ¶ 49. "As a general rule, the Montana public policy is prescribed by the legislature through its enactment of statutes." *Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, ¶ 32, 315 Mont. 107, 67 P.3d 892 (citing *Duck Inn, Inc. v. Mont. St. Univ.*, 285 Mont. 519, 523-24, 949 P.2d 1179, 1182 (1997)). Insurance provisions which "violate express statutes" are contrary to public policy and void. *Mont. Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 2008 MT 2, ¶ 55, 341 Mont. 33, 174 P.3d 948.

¶26   The McCartneys argue that the Family Member Exclusion violates public policy because it is inconsistent with §§ 61-6-103 and 301, MCA. McCartneys argue that these statutes insure protection for "innocent victims of automobile accidents," citing *Iowa Mut. Ins. Co. v. Davis*, 231 Mont. 166, 752 P.2d 166 (1988), and that § 61-6-301, MCA, requires further identification of those who are "named insureds" than that provided

13

under the Umbrella Policy. However, McCartneys read "public policy" into these statutes that go far beyond their wording or meaning.

¶27 In *Davis*, at issue was the validity of a "named driver exclusion," which removed from coverage persons expressly excluded on an automobile liability policy. *Davis*, 231 Mont. at 167, 752 P.2d at 167. The Davises requested that their children be excluded from their policy to lower their premiums. *Davis*, 231 Mont. at 167, 752 P.2d at 167. Nonetheless, one of their sons drove the Davises' vehicle and crashed it, injuring his passenger. *Davis*, 231 Mont. at 167, 752 P.2d at 167. Iowa Mutual denied all coverage for the passenger's injuries under the exclusion. *Davis*, 231 Mont. at 168, 752 P.2d at 167. This Court struck down the exclusion as against public policy because it left the passenger in the insured vehicle *without any coverage*, in violation of the mandatory liability insurance statute. *Davis*, 231 Mont. at 170, 752 P.2d at 168. Our general statement in *Davis* that the liability insurance law protects "innocent victims of automobile accidents" was made in the context of our holding that the minimum coverage limits required by §§ 61-6-103, MCA, and 61-6-301, MCA, are applicable to all vehicles insured under an automobile policy. *Davis*, 231 Mont. at 170, 752 P.2d at 169. We further explained that this public policy did not prevent insurers and insureds from *limiting* coverage to the mandatory minimum levels required by the statute:

> Our decision does not, however, read the named driver exclusionary endorsement out of the contract entirely. Rather, contracting parties are *free to limit coverage* in excess of the minimum required limits, and the exclusion found in the contract is valid in relation to any coverage exceeding the minimum amounts.

14

*Davis*, 231 Mont. at 172-73, 752 P.2d at 170 (emphasis added) (quoting *Allstate Ins. Co. v. U.S. Fid. & Guar.*, 619 P.2d 329, 333 (Utah 1980)).

¶28  Voiding the Family Member Exclusion in the Umbrella Policy at issue here pursuant to an expansive public policy of protecting "innocent victims of automobile accidents," as proposed by the McCartneys, could potentially invalidate any number of coverage exclusions without the necessity of conducting a critical analysis of Montana's public policy.  Our cases contain numerous examples of claims to coverage that were denied because of valid exclusions.  *See e.g. Livengood*, ¶¶ 6, 9, 27 (no insurance coverage to injured party because tortfeasor driver was excluded by "nonowned automobile exclusion"); *Rowe*, 245 Mont. at 414, 418, 800 P.2d at 158, 161 (denying underinsured motorist coverage to estate of "fatally injured" man because umbrella policy excluded such coverage); *Stutzman*, 284 Mont. at 375, 945 P.2d at 33 (no underinsured coverage for wife injured in accident because of policy exclusion that defined "underinsured motor vehicle" not to include vehicles owned by named insured or any "relative"); *Newbury v. State Farm Fire & Cas. Ins. Co.*, 2008 MT 156, ¶¶ 6, 9, 49, 343 Mont. 279, 184 P.3d 1021.  Indeed, all policy exclusions operate to deny coverage in some way, but not necessarily in violation of Montana public policy.

¶29  Section 61-6-301(1)(a), MCA, requires all motor vehicles to have a minimum level of liability insurance:

> [A]n owner of a motor vehicle that is registered and operated in Montana by the owner or with the owner's permission shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property suffered by any person caused by

15

maintenance or use of a motor vehicle in an amount not less than that required by 61-6-103[.][4]

Section 61-6-103(1)(b)(i)-(iii), MCA, requires motorists to obtain automobile liability insurance covering, at a minimum, bodily injury limits of $25,000 per person and $50,000 per accident, and a property damage limit of $10,000 per accident.

¶30 Our cases illustrate the reach of these provisions to void coverage exclusions. In *Royle*, a woman sued her parents for injuries she sustained while a passenger in a vehicle driven by her mother. *Royle*, 202 Mont. at 174, 656 P.2d at 821. The automobile liability policy excluded coverage for "'bodily injury to any person who is related by blood, marriage, or adoption to the insured, if that person resides in the insured's household at the time of loss.'" *Royle*, 202 Mont. at 174, 656 P.2d at 821 (original brackets omitted). Under this household exclusion, the daughter was not covered. We struck down the exclusion as contravening the requirements of § 61-6-301(1)(a), MCA, that vehicle owners "continuously" provide minimum liability coverage for bodily injury to "any person," which included household members. *Royle*, 202 Mont. at 177-79, 656 P.2d at 823-24.

¶31 Conversely, in *Stutzman*, we upheld a household exclusion within underinsured motorist coverage as not inconsistent with §§ 61-6-301 and 61-6-103, MCA. After she was injured as a passenger in her husband's vehicle, Stutzman sought payment under the liability and underinsured motorist coverages. *Stutzman*, 284 Mont. at 375, 945 P.2d at

---

[4] Section 61-6-301, MCA, does not govern the identification of "named insureds" in an automobile liability policy.

33. Safeco paid under the liability coverage but denied Stutzman's demand for payment of underinsured motorist coverage based on an exclusion that removed from the definition of "underinsured motor vehicle" any vehicle "'owned by or furnished for the regular use of the named insured or any relative . . . .'" *Stutzman*, 284 Mont. at 378, 945 P.2d at 35. Stutzman asked the court to void the exclusion on public policy grounds, arguing that under *Royle*, all "household exclusion clauses in bodily injury liability policies are void." *Stutzman*, 284 Mont. at 380, 945 P.2d at 37. We rejected such a broad application of *Royle* and upheld the exclusion, reasoning that:

> Although this Court may indeed invalidate a household exclusion clause which violates Montana's mandatory insurance law, there is no statutory mandate for underinsured motorist coverage in Montana. Pursuant to § 61-6-103(8), MCA, optional underinsured motorist coverage is not subject to the provisions of Montana's Motor Vehicle Safety Responsibility Act. Therefore, the parties may freely contract to produce exclusions or limitations on underinsured motorist coverage.

*Stutzman*, 284 Mont. at 380-81, 945 P.2d at 37. Because the exclusion in the underinsured coverage did not nullify the mandatory liability limits, the exclusion did not violate public policy and the parties were free to contract for this policy limitation. *Stutzman*, 284 Mont. at 380-81, 945 P.2d at 37.

¶32 Sections 61-6-301 and 61-6-103, MCA, thus prohibit exclusions that result in failure to provide the minimum coverage required under the statutes. We have voided exclusions as against public policy when they contravene these mandatory statutory minimums. *See Davis*, *supra* (invalidating "named driver exclusion" that removed entirely from coverage those expressly excluded in auto policy as violating § 61-6-

17

301(1)); *Royle*, 202 Mont. at 181, 656 P.2d at 824 (invalidating household exclusion in auto policy as violating § 61-6-301(1) because it removed *all* coverage to household members); *Bill Atkinson Volkswagon v. McClafferty*, 213 Mont. 99, 104, 689 P.2d 1237, 1240 (1984) (holding § 61-6-301(1), MCA, requires an automotive dealership to maintain the statutory minimum insurance on the dealership's "loaner" vehicles); *Swank v. Chrysler Ins. Corp.*, 282 Mont. 376, 383, 938 P.2d 631 (1997) (voiding exclusion in liability policy for vehicle dealership that provided coverage for customers only if the customer was uninsured or underinsured). We have upheld exclusions as not violative of public policy and subject to the parties' freedom to negotiate when they limited other, nonmandatory coverages. *See Stutzman, supra* (exclusion of family member vehicles from definition of "underinsured motor vehicle" upheld because the parties were free to "contract to produce exclusions or limitations on [optional] underinsured motorists coverage."); *Livengood*, ¶ 27 ("nonowned automobile exclusion" did not violate Montana public policy because the policy at issue provided the "mandatory liability coverage required by §§ 61-6-301(1) and 61-6-103(2)(b)"). The Family Member Exclusion within Les's optional Umbrella Policy does not violate §§ 61-6-103 and 61-6-301(1), MCA. Because the Exclusion does not "violate express statutes," *Crumleys*, ¶ 55, it does not contravene public policy in that way. *See Newbury*, ¶ 36 ("In Montana, parties to an insurance contract may include provisions that exclude coverage without violating public policy if the exclusion applies to optional, rather than mandatory coverage.").

18

¶33 We have also voided insurance clauses as against public policy in other situations. We have voided a subrogation clause in a policy if it undermines the judicially recognized made-whole doctrine. *See Youngblood*, 262 Mont. at 400, 866 P.2d at 208 (voiding medical payment subrogation clause because it contradicted the made-whole doctrine); *Allstate Ins. Co. v. Reitler*, 192 Mont. 351, 355, 628 P.2d 667, 670 (1981) (same). Also, we have voided provisions that render coverage "illusory" by "defeat[ing] coverage for which the insurer has received valuable consideration." *Bennett v. State Farm Mut. Auto. Ins. Co.*, 261 Mont. 386, 389, 862 P.2d 1146, 1148 (1993); *Hardy*, ¶¶ 25-29 (holding as violative of Montana public policy anti-stacking provision in a policy that permitted insurer to receive valuable consideration for coverage not provided); *Mitchell v. State Farm Ins. Co.*, 2003 MT 102, ¶ 42, 315 Mont. 281, 68 P.3d 703 (same). These situations do not exist here. There is no subrogation clause, and exclusion of Sharon's claim does not render coverage under the Umbrella Policy illusory. The Policy provides the liability coverage for which the premium was paid, protecting Sharon from third-party automobile claims as well as farm, residential, business and office premises liability, watercraft liability, false arrest, defamation, invasion of privacy and other tort claims. As demonstrated here, umbrella policies are written to provide broad coverage for numerous risks against third parties.

¶34 The McCartneys cite three cases from other jurisdictions that voided household exclusions in umbrella policies as against public policy when applied to automobile accident victims. *See State Farm Mut. Auto. Ins. Co. v. Marley*, 151 S.W.3d 33 (Ky.

19

2004); *Safeco Ins. Co. v. Auto. Club Ins. Co.*, 31 P.3d 52 (Wa. App. Ct. 2001); *GEICO Ins. Co. v. Welch*, 90 P.3d 471 (N.M. 2004). However, the reasoning of these courts is inapposite with Montana law and public policy. First, unlike Montana, where the mandatory insurance laws provide *minimum coverage* for the purpose of protecting victims of automobile accidents, the Washington, Kentucky, and New Mexico courts cited by the McCartneys interpret their mandatory insurance laws to require *full compensation* to injured victims. *Safeco*, 31 P.3d at 55-56; *Welch*, 90 P.3d at 474; *Marley*, 151 S.W.3d at 36.

¶35 Second, these courts reasoned that the distinction between mandatory coverage (primary automobile liability policies) and optional coverage (umbrella policies) was "irrelevant" to the question of whether public policy voided the household exclusion. *Marley*, 151 S.W.3d at 36 (internal citation omitted); *accord Safeco*, 31 P.3d at 56; *Welch*, 90 P.3d at 474-76. In contrast, our precedent clearly distinguishes between mandatory coverage and optional coverages that fall outside the ambit of Montana's mandatory insurance laws. *Newbury*, ¶ 35; *Stutzman*, 284 Mont. at 380-81, 945 P.2d at 37; *Davis*, 231 Mont. at 172, 752 P.2d at 170-71.[5]

---

[5] It has been noted that imputation of mandatory insurance requirements on optional coverages is not without problems:

> [B]ecause of misunderstanding of the courts as to the nature of [umbrella] coverages, they have been held to fall within the definition of automobile liability insurance. . . . It should be recognized that the generosity of the courts confers no favor upon the insuring public. Such decisions result either in [umbrella] coverage being withdrawn from potential insureds or in premium rates being raised so substantially that they will become priced out of range of most buyers.

8C Appleman, *Insurance Law & Practice*, § 5071.65 at 107-08 (West Publ. Co. 1981).

¶36    Finally, these courts found the household exclusion to be an "arbitrary" provision that denied coverage for "no legitimate reason." *Safeco*, 31 P.3d at 56; *accord Welch*, 90 P.3d at 475; *Marley*, 151 S.W.3d at 36.   Many other courts have found reasons to conclude such exclusions are not arbitrary.   The exclusion helps keep umbrella policies affordable by avoiding "'coverage for those in the family circle, who, on account of their close intimacy, may be expected to be riding at frequent intervals in the insured car.'" *Alfa Ins. Co. v. Hasselle*, 74 So.3d 371, 375-76 (Miss. App. 2011) (quoting *Perry v. S. Farm Bur. Cas. Ins. Co.*, 170 So.2d 628, 630 (Miss. 1965)).   This has allowed insurers to offer umbrella policies at a cost far less than auto policies:

> "[U]mbrella policies' raison d'etre is to provide individuals with affordable protection against excess judgments of third parties, rather than provide individuals with automobile insurance.   This fundamental difference is underscored by the difference in premiums that an insurance company charges for the two types of policies.   Due to the relative risks associated with each, the premiums that insurance companies charge for umbrella policies are substantially lower than the premiums that insurance companies charge for automobile insurance."

*Kromer v. Reliance Ins. Co.*, 677 A.2d 1224, 1228 (Pa. Sup. 1996) (rejecting argument that umbrella polices must conform to requirements of Pennsylvania's mandatory auto insurance laws) (quoting *Stoumen v. Pub. Ser. Mut. Ins. Co.*, 834 F. Supp. 140, 143 (E.D. Pa. 1993)).   Consistent therewith, the record of this case indicates that Les paid $289 annually for $250,000 per person and $500,000 per occurrence liability protection under his automobile policy, but only $201 annually for $2,000,000 per occurrence liability protection under the Umbrella Policy.

21

¶37    Other courts have noted the insurer's interest in avoiding the risk of collusive claims amongst family members:

> The concept of a household exclusion is a common one which has long enjoyed judicial support. Its purpose is to prevent suspect inter-family legal actions which may not be truly adversary and over which the insurer has little or no control. Such an exclusion is a natural target for the insurer's protection from collusive assertions of liability.

*Farmers Ins. Exch. v. Cocking*, 628 P.2d 1, 4 (Cal. 1981) (en banc) (internal quotations omitted); *accord Allstate Ins. Co. v. Feghali*, 814 P.2d 863, 866 (Colo. 1991) (en banc).[6] The McCartneys argue that because Montana has abolished inter-spousal tort immunity, *see Miller v. Fallon County*, 222 Mont. 214, 721 P.2d 342 (1986) and *Royle*, 202 Mont. 173, 656 P.2d 820, insurers may no longer justify exclusion of family members because of the threat of collusive claims. Abolishment of spousal immunity no doubt prompted insurers to exclude spousal claims from coverage, but upholding the Exclusion in this Policy does not frustrate the abolishment of such immunity. Nothing in this decision prevents Sharon from bringing a negligence claim against Les, and she did so successfully, collecting pursuant to Les's automobile liability coverage. *See Costello v. Nationwide Mut. Ins. Co.*, 795 A.2d 151, 159 n. 3 (Md. App. Ct. 2002).

¶38    In conclusion, the Family Member Exclusion does not contravene an express statute, undermine the made-whole doctrine, constitute illusory coverage that "defeats coverage for which the insurer has received valuable consideration," or violate public

---

[6] The McCartneys correctly point out that "[t]here is absolutely no evidence in this case of collusion or fraud on the part of Les." However, consideration of public policy is an objective inquiry into the relevant principles in statutes and case law.

22

policy in any other way. *Bennett*, 261 Mont. at 389, 862 P.2d at 1148. We note that, in holding that a household exclusion in an umbrella policy does not violate public policy, we join the majority of jurisdictions that have addressed the issue.[7]

¶39 *3. Did the District Court err by concluding that the Family Member Exclusion was unconscionable?*

¶40 In a very brief analysis, the District Court held that the Family Member Exclusion was unconscionable because it excluded from coverage a class of victims most likely to be exposed to injury, quoting *Safeco*'s statement that "typical family relations require family members to ride together on the way to work, church, school, social functions, or family outings." *Safeco*, 31 P.3d at 54-55. We have discussed above the dispositive distinctions between *Safeco* and Montana law.

¶41 "Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Summers v. Crestview Apartments*, 2010 MT 164, ¶ 22, 357 Mont. 123, 236 P.3d 586 (citing *Iwen v. U.S. West Direct*, 1999 MT 63, ¶ 31, 293 Mont. 512, 977 P.2d 989). A provision "unreasonably favors the drafter" when it is "'so one-sided as to be unconscionable under the

---

[7] *See e.g. Farm Bureau Mut. Ins. Co. v. Schrock*, 252 P.3d 98, 105 (Idaho 2011); *Costello v. Nationwide Mut. Ins. Co.*, 795 A.2d 151, 159-60 (Md. 2002); *Bogas v. Allstate Ins. Co.*, 562 N.W.2d 236, 237 (Mich. App. 1997); *Elec. Ins. Co. v. Rubin*, 32 F.3d 814, 818-20 (3rd Cir. 1994) (applying Pennsylvania law); *Walker v. State Farm Mut. Auto. Ins.*, 850 So.2d 882, 889 (La. App. 2003); *Weitz v. Allstate Ins. Co.*, 642 A.2d 1040, 1041-42 (N.J. Supp. App. Div. 1994); *State Farm Mut. Auto. Ins. Co. v. Daprato*, 840 A.2d 595, 599 (Del. 2003); *Schanowitz v. State Farm Mut. Auto. Ins. Co.*, 702 N.E.2d 629, 633 (Ill. App. 1998); *State Farm Mut. Auto Ins. Co. v. Gengelbach*, 1992 WL 88025, *4 (D. Kansas 1992) (applying Missouri law).

circumstances existing at the time of the making of the contract.'"[8]  *All-States Leasing Co. v. Top Hat Lounge, Inc.*, 198 Mont. 1, 6, 649 P.2d 1250, 1252-53 (1982) (quoting official comment to U.C.C. § 2-302); *Westlake v. Osborne*, 220 Mont. 91, 96, 713 P.2d 548, 551 (1986) (same); *Kelly v. Widner*, 236 Mont. 523, 527, 771 P.2d 142, 145 (1989) (same).

¶42    It is the burden of the party seeking to void a provision to raise facts sufficient to demonstrate the provision is "so one-sided as to be unconscionable."  *Westlake*, 220 Mont. at 96, 713 P.2d at 552.  In *Leibrand v. Natl. Farmers Union Prop. & Cas. Co.*, 272 Mont. 1, 12, 898 P.2d 1220, 1227 (1995), we declined to address the conscionability of a household exclusion because "based on the record before us, we ha[d] an insufficient factual basis" to determine if the provision unreasonably favored the insurer.

¶43    Likewise, we cannot conclude, based upon the factual record here, that the Family Member Exclusion is "so one-sided as to be unconscionable."  *Westlake*, 220 Mont. at 96, 713 P.2d at 552.  The McCartneys have not demonstrated that the coverages provided by the Umbrella Policy in exchange for the premium paid were rendered oppressive because Sharon's excess liability claim against Les was excluded.  Nor have they shown, by statistics or otherwise, that the exclusion of family members enabled State Farm to reap a benefit from an oppressive term or from illusory coverage.  They have not shown that

---

[8]  This test is consistent with the early enunciations of unconscionability.  *See Hume v. U.S.*, 132 U.S. 406, 415, 10 S. Ct. 134, 137 (1889) (an unconscionable bargain is "such as no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other[.]").

24

higher liability coverage for injuries suffered by family members was not available on the open insurance market.[9]

¶44 The only argument offered by McCartneys to demonstrate that the Family Member Exclusion unreasonably favors State Farm is that "it allows State Farm to arbitrarily deny coverage to any family member." As discussed above, however, ¶¶ 36-37, the Family Member Exclusion is not arbitrary in this manner. The exclusion makes it possible to make broad excess coverage available at an economical cost by excluding from coverage "those in the family circle, who, on account of their close intimacy, may be expected to be riding at frequent intervals in the insured car," *Perry*, 170 So.2d at 630, and by "prevent[ing] suspect inter-family legal actions which may not be truly adversary and over which the insurer has little to no control." *Cocking*, 628 P.2d at 4. The McCartneys' premiums for $2,000,000 in umbrella coverage were more economical than the premiums for $500,000 in automobile liability coverage. Permitting frequent family passengers to turn economical excess coverage into expensive liability coverage would be contrary to the Umbrella Policy's purpose and undermine its viability. We conclude that McCartneys have not carried the burden of establishing that the Family Member Exclusion is unconscionably one-sided, and the District Court erred in so concluding. We need not address the second unconscionability prong.

---

[9] The parties disputed in their briefing whether Les had purchased the highest limits of liability insurance available to him from State Farm. During oral argument, counsel for State Farm stated the record did not support Les's contention and that Les could have purchased higher liability limits, but that State Farm had not been given the opportunity to submit evidence of this fact for the record. McCartneys did not dispute this position at oral argument. As noted above, it was McCartneys' burden to establish the factual record necessary to support their unconscionability claim. *Westlake*, 220 Mont. at 96, 713 P.2d at 552.

¶45    We reverse the District Court's entry of summary judgment in favor of McCartneys and remand for entry of judgment in favor of State Farm.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER

/S/ DEBORAH KIM CHRISTOPHER
District Court Judge Kim Christopher
sitting for Justice Mike E Wheat