# MEADOW BROOK, LLP,
## Plaintiff and Appellee,
### v.
# FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation; and FIRST AMERICAN TITLE COMPANY OF MONTANA, INC., a Montana corporation, Defendants and Appellants.

No. DA 13-0698.
Submitted on Briefs May 28, 2014.
Decided July 16, 2014.
2014 MT 190.
375 Mont. 509.
329 P.3d 608.

For Appellant: **Ian McIntosh, Kelsey Bunkers**, Crowley Fleck, PLLP, Bozeman.

For Appellee: **Donald L. Harris**, Harris & Associates, PLLC, **L. Randall Bishop**, Bishop & Heenan Law Firm, Billings.

JUSTICE COTTER delivered the Opinion of the Court.

¶1 First American Title Insurance Company and First American Title Company of Montana (collectively First American) appeal from orders of the Tenth Judicial District Court, Fergus County, granting Meadow Brook, LLP's motion for partial summary judgment, denying First American's motion for partial summary judgment, and denying First American's M. R. Civ. P. 54(b)(1) motion to amend. We affirm.

¶2 We restate the dispositive issue on appeal as follows:

¶3 *Did the District Court err when it granted Meadow Brook's motion for partial summary judgment and denied First American's motion for partial summary judgment on Meadow Brook's breach of contract claim?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶4 First American Title Insurance Company is a California corporation that sells and issues title insurance policies and is licensed to do business in Montana. First American Title Company of Montana is a Montana corporation that procures title insurance policies for clients from title insurance companies like First American Title Insurance Company.

¶5 Meadow Brook is a Montana limited liability partnership owning land outside of Lewistown, Montana. In 1996, Meadow Brook developed a portion of its land in two phases, Meadow Brook I and Meadow Brook II. Meadow Brook I contained twenty lots, and Meadow Brook II contained five lots. The lots in Meadow Brook I and II were subject to covenants, conditions, and restrictions. Private owners and Meadow Brook owned lots in both Meadow Brook I and II. Meadow Brook later planned a third phase of development involving either an independent subdivision or annexation of the undeveloped lands into Meadow Brook I and II. The existing homeowners rejected the annexation option. They opposed expansion of the development and contended that the covenants granted them exclusive use of three roads: Meadow Brook Drive, Blue Bell Drive, and Sun Flower Lane. Meadow Brook disagreed and argued that the covenants reserved an easement over the roads for use by future lot owners of the undeveloped tract.

¶6  Due to the homeowners' opposition, Meadow Brook decided to develop the land independently as the Meadow Brook South Subdivision, and it filed a subdivision application with the Fergus County Commissioners. The County Commissioners conditionally approved the South Subdivision; one condition was that Meadow Brook either provide evidence that all of the homeowners would allow physical and legal access to the South Subdivision via the existing roadways, or that Meadow Brook obtain a judicial determination that Meadow Brook had reserved a right of access to the South Subdivision in the covenants.

¶7  Meanwhile, Meadow Brook's counsel contacted Scott Gray, First American's office manager, to discuss the access dispute and request a title commitment for the undeveloped lands. On September 23, 2008, First American issued a commitment for title insurance with a "to be determined" value. In November 2009, Meadow Brook requested a second title commitment from First American. On December 8, 2009, Meadow Brook's counsel emailed Gray regarding the requested commitment. The email included the following language:

> Your commitment guarantees legal access. Are you willing to provide an endorsement that specifies legal access via Meadow Brook Drive, Blue Bell Drive and Sun Flower Drive? As we have previously discussed, [Meadow Brook] is in an argument/dispute with the lot owners in Meadow Brook Phase I over the use of these three roads for future development... . Please inform me if you are willing to issue the endorsement.

On December 14, 2009, First American issued an endorsement "insur[ing] against loss or damage sustained by the Insured by reason of the failure of the Land to abut a physically open street known as Meadow Brook Drive, Blue Bell Drive and Sun Flower Lane as shown on the plat of Meadow Brook South Subdivision."

¶8  After another failed attempt at negotiations with the homeowners, Meadow Brook sent Gray notice of a claim against the title insurance policy to establish access to the South Subdivision. In turn, First American hired counsel to file an action on behalf of Meadow Brook and against the protesting landowners while reserving its right to contest coverage (the easement litigation). Meadow Brook and the homeowners filed cross-motions for summary judgment on the issue of whether the covenants, conditions, and restrictions governing Meadow Brook I and II provided access for future lot owners to the South Subdivision. On November 17, 2011, the court entered an order denying Meadow Brook's motion for summary judgment and granting

the homeowners' summary judgment motion. It concluded that the covenants did not reserve an easement over the three roads for use by future lot owners.

¶9 Subsequently, First American denied Meadow Brook's claim for coverage, declined to authorize an appeal in the easement litigation, and refused to further defend against the homeowners' counterclaims. Meadow Brook ultimately resolved its outstanding issues with the homeowners in the easement litigation by reducing the number of lots in the South Subdivision from 24 to 15 and by paying the landowners $75,000. Following this settlement, on April 24, 2012, Meadow Brook filed the instant complaint against First American, raising claims of breach of contract, waiver, violation of § 33-18-201, MCA, and negligence. Meadow Brook and First American filed cross-motions for partial summary judgment as to the breach of contract claim.

¶10 In a May 15, 2013 order, the District Court granted Meadow Brook's motion and denied First American's motion. The District Court concluded that the phrase "a physically open street" in the endorsement was ambiguous, and that the endorsement "[c]learly ... contemplated a determination that the specified streets were open to the public and were accessible pursuant to a private easement." Applying the reasonable expectations doctrine, the court determined that a consumer with average intelligence but not trained in the law or insurance business would reasonably expect "that the insurer was insuring that the three roads were open to public access, and not that [Meadow Brook] had access because of [its] ownership of land in Phase[s] I and II." According to the court, the loss claimed by Meadow Brook arose from a risk covered in the title insurance policy—namely the risk of not having a right of legal access to the land by way of the three streets. The court found that First American breached the policy provisions, and allowed Meadow Brook to recover for the losses it had sustained "due to the insured land not abutting a physical road open to public access." First American filed a motion pursuant to M. R. Civ. P. 54(b) and requested that the court revise its order or, in the alternative, certify the order as a final judgment. The court declined to revise its order but did certify it as a final judgment. This appeal follows.

¶11 First American argues that the policy only provided coverage for a right of access for Meadow Brook; it did not guarantee access for future lot owners. First American further argues that the District Court incorrectly applied the reasonable expectations doctrine and the policy exclusions. Meadow Brook counters that the District Court

correctly applied the reasonable expectations doctrine. It maintains that it had good reason to expect that it was insured against its losses, as First American knew the homeowners disputed Meadow Brook's contention that future lot owners had a right to access the roads, and First American provided a special access endorsement to that effect upon Meadow Brook's request.

## STANDARD OF REVIEW

¶12 We review a district court's ruling on a motion for summary judgment de novo, applying the criteria set forth in M. R. Civ. P. 56. *Dulaney v. State Farm Fire & Cas. Ins. Co.*, 2014 MT 127, ¶ 8, 375 Mont. 117, 324 P.3d 1211 (citation omitted). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Dulaney*, ¶ 8 (citing M. R. Civ. P. 56(c)(3)).

## DISCUSSION

¶13 *Did the District Court err when it granted Meadow Brook's motion for partial summary judgment and denied First American's motion for partial summary judgment on Meadow Brook's breach of contract claim?*

¶14 "The interpretation of an insurance contract is a question of law." *Fisher v. State Farm Mut. Auto. Ins. Co.*, 2013 MT 208, ¶ 15, 371 Mont. 147, 305 P.3d 861 (citation omitted). Insurance agreements are contracts and are subject to general rules of contract law. *Fisher*, ¶ 25 (citation omitted). We accord the usual meaning of the terms and the words in an insurance contract, and we construe them using common sense. *Fisher*, ¶ 15 (citation and quotation marks omitted).

¶15 We begin our analysis by addressing First American's argument that the District Court erred in applying the reasonable expectations doctrine because the policy provision was unambiguous. We first recognized the reasonable expectations doctrine in *Transamerica Ins. Co. v. Royle*, 202 Mont. 173, 656 P.2d 820 (1983), stating: "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Fisher*, ¶ 20 (quoting *Royle*, 202 Mont. at 180-81, 656 P.2d at 824; internal quotation marks omitted).

The genesis of this doctrine is the judicial recognition that most

insurance contracts, rather than being the result of anything resembling equal bargaining between the parties, are truly contracts of adhesion in which many insureds face two options: (1) accept the standard insurance policy offered by the insurer, or (2) go without insurance.

*Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 42, 354 Mont. 15, 221 P.3d 666 (citation and internal quotation marks omitted). The doctrine "is inapplicable where the terms of the policy at issue clearly demonstrate an intent to exclude coverage" because "expectations which are contrary to the clear exclusion from coverage are not objectively reasonable." *Fisher*, ¶ 20 (citations and internal quotation marks omitted).

¶16 There is no legal support for First American's contention that the reasonable expectations doctrine applies only when an insurance policy provision is ambiguous. The question of whether a provision is sufficiently "clear" to render the reasonable expectations doctrine inapplicable is different from the question of whether a provision is ambiguous. "If the reasonable expectations doctrine only applied when a provision was ambiguous, there would be no need for the doctrine, as Montana law independently construes ambiguous provisions against the insurer and in favor of coverage." *Fisher*, ¶ 19. Accordingly, it is unnecessary for us to determine whether the specific policy language was ambiguous as a predicate to addressing the District Court's application of the reasonable expectations doctrine.

¶17 ▪ Here, Meadow Brook expected the title insurance policy would cover its losses if the South Subdivision was not accessible to future lot owners via the three roads. This expectation was objectively reasonable, and the policy did not "clearly demonstrate an intent to exclude coverage." *Fisher*, ¶ 20. First American did not dispute that it received the December 8, 2009 email from Meadow Brook's counsel within five days of issuing its endorsement. The email clearly set forth Meadow Brook's request for an endorsement guaranteeing legal access to the South Subdivision. Further, there would be no reason for Meadow Brook to pay significant money for an endorsement to the title policy so as to ensure that Meadow Brook would have access to the undeveloped property when, as owner of that property and owner of lots in Meadow Brook I and II, it obviously had existing access without the need for any endorsement. Thus, the District Court did not err in concluding that Meadow Brook could reasonably expect its claims to be covered by the policy.

¶18 ▪ We next address First American's argument that the District

Court incorrectly applied one exclusion set forth in the title insurance policy while ignoring another applicable exclusion completely. "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application which is a part of the policy." Section 33-15-316, MCA. The title insurance policy provides in pertinent part: "The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of ... the subdivision of the land" or by reason of "[d]efects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed, or agreed to by the Insured Claimant." First American maintains these exclusions preclude coverage for Meadow Brook's claim, notwithstanding the endorsement. We disagree. The special access endorsement states: "To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls." Thus, by its very terms, the endorsement expressly overrides any provisions of the insurance contract that are inconsistent with an express provision of the endorsement. Because the exclusions are inconsistent with the endorsement, the District Court did not err in refusing to apply the foregoing exclusions.

¶19 First American also argues that the District Court's finding regarding public access was incorrect. We agree. Public access was not at issue; rather, at issue was a private road easement that would be open to use by the individuals who would be building homes in the South Subdivision. However, we nonetheless determine the District Court did not err in granting Meadow Brook's motion for summary judgment. We will uphold a district court's rulings that are correct regardless of the court's reasoning in reaching the decision. *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 80, 338 Mont. 41, 164 P.3d 851 (citations omitted).

¶20 Because we affirm the District Court's order granting Meadow Brook's motion for partial summary judgment and denying First American's motion for partial summary judgment, we need not reach First American's argument that the District Court erred in refusing to revise its order pursuant to M. R. Civ. P. 54(b)(1).

## CONCLUSION

¶21 For the foregoing reasons, we affirm the District Court's orders granting Meadow Brook's motion for partial summary judgment,

denying First American's motion for partial summary judgment on the breach of contract claim, and denying First American's M. R. Civ. P. 54(b)(1) motion to amend.

CHIEF JUSTICE McGRATH, JUSTICES BAKER, WHEAT and RICE concur.

JUSTICE RICE, concurring.

¶22 I concur with the Court's conclusion.

¶23 I find the insurance contract at issue to be a head-scratcher. After communications between the parties that included Meadow Brook's desire to insure legal access and First American's desire to avoid entanglement in an access lawsuit, an endorsement was issued and paid for that insured Meadow Brook against damages for the no-risk proposition of "the failure of the Land to abut a physically open street known as Meadow Brook Drive, Blue Bell Drive and Sun Flower Lane." While physical access can be insured, it was already self-evident to everyone that Meadow Brook's properties physically abutted these streets. Thus, while the words of the endorsement are not ambiguous in themselves, they certainly raise a question about the parties' intentions. As the Court notes, Meadow Brook would have no reason to pay for such unnecessary coverage. *See* Opinion, ¶ 17. But just as surely, in light of the active legal dispute over access, it was obviously imprudent for First American to insure over a risky legal access problem that would immediately draw it into the very thing it sought to avoid—access litigation. I suspect that First American's national underwriting guidelines, which urge special caution when faced with such issues as restrictive access covenants and private easements, did not serve to produce more careful language or a denial of the requested endorsement. That being so, and the intent of the endorsement being in question, the record was opened to extrinsic evidence about the parties' intentions under the contract.

¶24 I concur with the Court's essential reversal of the District Court's holding regarding public access. *See* Opinion, ¶ 19.