FILED

02/27/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0336

DA 17-0336

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 33N

LAURIE PARKS,

Plaintiff and Appellant,

v.

STEWART TITLE GUARANTY COMPANY,

Defendant and Appellee.

APPEAL FROM:     District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV 16-697
Honorable Mike McMahon, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Michael S. Kakuk, Kakuk Law Offices, PC, Helena, Montana

For Appellee:

Dale R. Cockrell, Moore, Cockrell, Goicoechea & Johnson, P.C., Kalispell,
Montana

Submitted on Briefs:  January 3, 2018

Decided:  February 27, 2018

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Laurie Parks (Parks) appeals from the Summary Judgment Order dismissing her claims against Stewart Title Guaranty Company (Stewart Title), entered in the First Judicial District, Lewis and Clark County. We affirm. Parks states five issues, but we address simply whether the District Court erred in granting summary judgment to Stewart Title.

¶3 Parks, Edward Parks, and Donald Tuschoff (Buyers) entered an agreement to purchase the Lincoln Hotel, in Lincoln, Montana, in October 2010. Upon Buyers' request, Stewart Title issued to them a Title Insurance Policy Commitment (Commitment) for the hotel real property (Property) in November 2010. The Property includes a road across its southern portion, in front of the hotel. On February 13, 2011, two of the Buyers executed a quitclaim deed transferring their interest in the Property to the Lincoln Hotel Limited, a Montana Corporation held by two of the Buyers and one other individual. Neither Parks nor the others had the Commitment updated or otherwise informed Stewart Title of the transfer. On February 15, 2011, Stewart Title issued a Title Insurance Policy (Policy). Schedule B of the Policy provided, in part:

> This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) that arise by reason of:

2

. . .

14. Statement of Dedication of a Roadway, recorded Oct. 21, 1969 in Book 258 Deeds, page 131.

. . .

19. Reservations set forth in instrument recorded November 14, 1980 in M Book 1 of Records, page 5521.

. . .

25. Agreement and Easement between [prior owners and neighbors], recorded Sept. 16, 2002 in M Book 27 of Records, page 769.

Though numbered differently, the Commitment contained the same exceptions.[1]

¶4     The "Statement of Dedication of a Roadway" identified in Exception 14 of the Policy was recorded by previous owners of the Property, and stated that they:

constructed and graveled a road into the Mulcare Addition to the Lambkin Subdivision at Lincoln, Montana, for the use and benefit of all persons residing in the Subdivision and using the road. That road will continue to provide ingress and egress to all persons purchasing lots within the Subdivision.

That we have heretofore dedicated the road, graded the same up, and graveled the same, and it is a well-defined road now being used for ingress and egress by all persons in the Subdivision, and the County has not agreed to accept the road, but that it is available and will be available, will not be sold, but has been dedicated by use to the residents of the Subdivision.

This document did not definitively identify the dedicated road as the road crossing the southern portion of the Property, but Stewart Title presented uncontested affidavits from the former owners indicating the road was the same one.

¶5     The recorded instrument identified in Exception 19 of the Policy was an "Abstract of Document for Recording." The document, recorded November 14, 1980, abstracts a

---

[1] The parties do not state, and the record does not indicate, the date of the closing of the transaction.

"contract for deed" for the sale of two tracts of property, including what would become the Property, and contains the following language within its description of the particular tract that would become the subject Property:

> RESERVING, however, unto grantor, his successors and assigns, an easement for roadway over, along, and across the Northeasterly 40 feet of said tract, as disclosed by said certificate of survey;

> ALSO RESERVING, unto grantor, his successors and assigns, *an easement for roadway over, along, and across the previously established road in the Southerly portion of said tract.*

(Emphasis added.) The description also identified the tract as being designated on "Certificate of Survey filed under No. 324435" (COS). The COS itself, recorded October 9, 1980, does not indicate the existence of the southerly easement across the Property, but attached to the COS was a schematic of a portion of the COS that indicated such a roadway, which was labeled "access easement." Stewart Title did not separately notice the COS to the Buyers, either on the Commitment or the Policy, and the failure to do so forms the basis of Parks' claims.

¶6 The Abstract also stated as follows:

> Parties hereto agree that upon recordation of a deed running from seller [Hannah] to buyer [Malek] and covering the herein described property, all persons may presume, conclusively, that all of the obligations undertaken by either of the parties hereto have been fully paid and discharged to the satisfaction of the other party.

¶7 A Warranty Deed for this transaction, using the identical language describing the tract and the easement reservations as in the Abstract, running from Hannah to Malek, was recorded on July 29, 1986.

4

¶8 The recorded document identified in Exception 25 created an "easement" whereby the previous owners of the hotel allowed a neighbor to access an encroaching garage and shed. The agreement provided the easement could be voided at any time, and in 2013, Parks voided the easement. Parks believed the voidable easement was the one running on the southern end of the Property, and used by her neighbors. After she voided what she believed to be that easement, Parks cut off access to the southerly road, leading to litigation.

¶9 In 2013, Parks requested Stewart Title defend a suit filed against the Lincoln Hotel Limited alleging an express easement and adverse possession across the southerly road. Stewart Title denied coverage on the grounds that the Policy terminated upon the transfer of the Property to the Lincoln Hotel Limited, adverse possession claims were not covered by the Policy, and the express easement was identified in Policy Exceptions 14 and 19. That suit ended with a settlement, wherein the parties stipulated to the existence of the southerly road easement. Parks then brought this action against Stewart Title, alleging breach of contract, violations of the Montana Unfair Trade Practices Act (UTPA), actual fraud, and constructive fraud. Parks alleged that Stewart Title was legally and contractually required to disclose the COS to her and failed to do so, leading her to believe there was no easement across the Property for the southerly road. Parks asserted had she known of the easement, she would not have purchased the property.

¶10 Parks and Stewart Title filed cross motions for Summary Judgment, and the District Court ruled in favor of Stewart Title, dismissing all of Park's claims. With regard to the contract claim, the District Court held that the Policy terminated upon transferring the Policy to the corporation, given the policy language that provides coverage to a grantee of

5

an insured only if the grantee is wholly-owned by the named insureds. The District Court further held that while Exception 14 was not specific enough to unambiguously identify the southerly road, Exception 19 expressly disclosed and excepted from coverage the southern easement. The District Court held the contract did not require the disclosure of every document reflecting a title defect or exception. The District Court also dismissed Parks' claim under the UTPA, holding there was no misrepresentation given the easement had been disclosed. With regard to fraud, the District Court held the allegations were insufficiently pled, and also failed because the easement was in fact disclosed. Parks now appeals.

¶11 The gravamen of Parks' claims is that Stewart Title had an obligation to either expressly exclude or expressly cover the COS within the Commitment and Policy, and the failure to do so left her without notice of the southerly road easement.

¶12 Title insurance is a contract to indemnify the insured against loss through defects in the insured title or against liens or encumbrances that may affect the insured title at the time the policy is issued. *Malinak v. Safeco Title Ins. Co.*, 203 Mont. 69, 74, 661 P.2d 12, 14 (1983) (citations omitted). The interpretation of a title insurance policy is a question of law. *Meadow Brook, LLP v. First Am. Title Ins. Co.*, 2014 MT 190, ¶ 14, 375 Mont. 509, 329 P.3d 608 (citations omitted). Title insurance agreements are contracts and are subject to general rules of contract law. *Meadow Brook, LLP*, ¶ 14 (citations omitted). When a title policy incorporates an instrument in an exclusion, the instrument is construed in favor of coverage if it is ambiguous. *Crossman v. Yacubovich*, 290 S.W.3d 775, 780 (Mo. Ct. App. 2009). There being no conflict in material facts, the question before us in this

summary judgment matter is whether the District Court erred in holding that Stewart Title was entitled to judgment as a matter of law. *Harpole v. Powell Cty. Title Co.*, 2013 MT 257, ¶ 15, 371 Mont. 543, 309 P.3d 34.

¶13     Uncited by either party, the Montana Title Insurance Act sets requirements for title insurers:

> (1) A title insurer may not issue a title insurance policy unless it, its title insurance producer, or an approved attorney has conducted a reasonable search and examination of the title and made a determination of insurability of title in accordance with sound underwriting practices . . . .
>
> .   .   .
>
> (3)   Except as allowed by rules adopted by the commissioner, a title insurer or title insurance producer *may not knowingly issue any title insurance product or commitment to insure unless all outstanding enforceable recorded liens or other interests against the property title to be insured are shown*.
>
> (4)   An insurer issuing a policy in violation of this section is estopped, as a matter of law, to deny the validity of the policy as to any claim or demand of the insured arising under the policy.

Section 33-25-214, MCA (emphasis added).   Regulations promulgated by the State Auditor, as Insurance Commissioner, to implement this statute, require that:

> [A] title insurer *show all outstanding enforceable recorded liens or other interests against the property title* to be insured under an owner's title insurance policy and make a determination of insurability as to possible liens and encumbrances . . . .

Admin. R. M. 6.6.2201(3) (emphasis added).  Thus, "all outstanding enforceable recorded liens and other interests" against a property must be "shown" on a title commitment or policy.  If they are not, then the insurer would be estopped from denying coverage.  Again,

7

the requirement in both the statute and regulations is that the insurer *show* all of the stated encumbrances.

¶14     Parks argues the Abstract noticed in Exception 19 was not sufficient to advise her of the southern easement because the Abstract did not, and legally could not, create the easement.  Parks argues the District Court erred by its brief statement that the Abstract "create[d] an easement for the southern road," and, therefore, she was entitled to express notice of the COS because it actually created the easement.  However, while the District Court's brief statement about the Abstract "creating" the easement was an incorrect statement of the law, that was not the true basis for its decision.  Rather, the District Court reasoned that, by listing the Abstract in the Policy, Stewart Title had adequately disclosed and excepted the easement from the Policy's coverage.

¶15     As the case is presented here, we conclude that the District Court correctly held that Stewart Title had fulfilled its contractual obligation and, further, fulfilled the statutory and regulatory requirements to "show" the easement.  Stewart Title did *show* the southerly road easement in the Abstract referenced in Exception 19, which unambiguously reserved "an easement for roadway over, along and across the previously established road in the Southerly portion of said tract."  Further, although the Policy and Commitment did not separately list and except the COS, the Abstract expressly referenced the COS, which would have provided further confirmation of the existence of the easement.  Thus, Stewart Title did notice and determine coverage for the southerly road easement, by excluding it.  Parks does not establish any requirement in the contract, statute, or regulations that obligated Stewart Title to list and except all recorded documents that referenced or created

8

a particular encumbrance. Upon this conclusion, all of Parks' other claims or theories of liability also fail.[2]

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the District Court's interpretation and application of the law were correct.

¶17 Affirmed.

/S/ JIM RICE

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER

---

[2] That is not to say that we have no reservations about Stewart Title's performance in this case. Though the point is not argued, the disclosure of the 1980 Abstract provided notice of a property transfer that was merely *contingent* upon performance of a sales contract. The Abstract itself stated that the contractual obligations could be conclusively presumed to have been discharged "upon recordation of a deed" between the parties, which did not occur until the recording of the Warranty Deed in 1986. While providing notice of the easement by description and by reference to the COS, the Abstract, without more, did not disclose whether the contract had ultimately been fulfilled. Contract fulfilment and property transfer could have been demonstrated by Stewart Title also disclosing the Warranty Deed recorded in 1986, which would have been, at a minimum, a superior satisfaction of the statutory and regulatory requirement to "show all *outstanding*" interests. Admin. R. M. 6.6.2201(3) (emphasis added).